## FINRA DISPUTE RESOLUTION
## ARBITRATION PROCEEDING

JOSE A. TORRES AND ISABEL LITOVICH QUINTANA,

                    Claimants,

vs.

MORGAN STANLEY SMITH BARNEY LLC D/B/A
MORGAN STANLEY,

                    Respondent.

_____/

### STATEMENT OF CLAIM

    Claimants, JOSE A. TORRES and ISABEL LITOVICH QUINTANA, pursuant to the Rules of the Financial Industry Regulatory Authority ("FINRA") and Title 9, U.S.C. § 1, et seq., file this claim against Respondent, MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY and as grounds therefore allege as follows:

### I.  JURISDICTION AND VENUE

    1.    Pursuant to Title 9 of the United States Code, § 1, et seq., and by reason of its membership in the FINRA and/or its association with a member of the FINRA, the Respondent is required to arbitrate all the claims set forth herein and empower the FINRA arbitrators with the authority to make any award, including an award for all relief sought herein, as required by the FINRA Code of Arbitration Procedure and FINRA Conduct Rules. JOSE A. TORRES and ISABEL LITOVICH QUINTANA reside in San Juan, Puerto Rico and as such request that the final hearing take place in San Juan, Puerto Rico.

### II.  THE PARTIES

    2.    Claimants, JOSE A. TORRES ("JOSE") and ISABEL LITOVICH QUINTANA ("ELIZABETH") are residents of San Juan, Puerto Rico, are over the age of eighteen years and are otherwise *sui juris.*

3.      Respondent, MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY ("MORGAN STANLEY"), upon information, is registered with the United States Securities and Exchange Commission ("SEC"), the Florida Office of Financial Regulation and the Commissioner of Financial Institutions of Puerto Rico as a securities broker-dealer.  MORGAN STANLEY is also a member of the Financial Industry Regulatory Authority ("FINRA") and other national securities exchanges and self-regulatory organizations ("SROs").      MORGAN STANLEY is subject to the laws and regulations of the United States, the State of Florida, the Commonwealth of Puerto Rico, the FINRA, the SEC and other SROs, as well as its own internal rules, policies and procedures.  At all times relevant and material hereto, MORGAN STANLEY conducted its business with the Claimants through its offices located in Miami, Florida.

4.      At all times material hereto, Angel Aquino ("Aquino"), was an employee and/or registered representative of MORGAN STANLEY and was acting within the scope of his employment and/or agency.

5.      MORGAN STANLEY is vicariously liable for the acts and omissions of its employees and its other agents, including Aquino, by virtue of the doctrine of *respondeat superior* and actual or apparent authority.

### III.  FACTS

#### a.  Jose and Elizabeth entrusted Aquino with their irreplaceable savings

6.      JOSE is 64 years old.  His wife ELIZABETH is 63 years old.

7.      JOSE works for a bank in Puerto Rico in its special loans department.  JOSE has never held a securities license and is not involved in the securities industry.  ELIZABETH is a homemaker.

8.      JOSE was born and raised in Puerto Rico.  ELIZABETH was born in Cuba, shortly before Fidel Castro's rise to power.  At the age of seven, she emigrated to the United States and moved to Puerto Rico.

**SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.**

9.     JOSE and ELIZABETH are high school sweethearts.  They have 3 children, and have been married for more than 40 years.

10.    JOSE and ELIZABETH lived, worked and raised their family in the New York/New Jersey area for nearly 20 years before moving back to Puerto Rico in or about 2005.

11.    In 2000, JOSE'S father passed away, and left an inheritance to JOSE and his brother.   Since JOSE'S father passed away, JOSE and his brother have been financially responsible for their 90 year old mother.  They pay for all of her expenses, including multiple surgeries and full time care at an assisted living facility.

12.    In or about 2000, JOSE met Aquino through his brother, who was already a customer of Aquino.

13.    JOSE and ELIZABETH have been customers of Aquino since approximately 2005, after they moved back to Puerto Rico.  Aquino serviced their accounts at UBS and later at Merrill Lynch, from offices in Puerto Rico.

14.    Through the years, Aquino befriended JOSE'S brother, and their relationship evolved to the point that Aquino asked JOSE'S brother to be godfather to one of his children.  As a result of Aquino's longstanding relationship with JOSE'S brother, JOSE and ELIZABETH had complete trust and confidence in Aquino, whom they believed to be their trusted financial advisor and friend.  Regrettably, Aquino violated the complete confidence JOSE and ELIZABETH placed in him.

15.    In early 2010, Aquino began working at MORGAN STANLEY in Miami, Florida.

16.    In or about September 2010, Aquino successfully solicited JOSE to transfer his accounts to MORGAN STANLEY.

17.    Aquino established the following accounts for JOSE and ELIZABETH at MORGAN STANLEY:

| ACCOUNT NUMBER | ACCOUNT TITLE |
|---|---|
| XXX-X2208/ XXX-XX2144[1] | Jose A. Torres and Isabel Litovich Quintana |
| XXX-X2236/ XXX-XX2164[2] | Isabel Litovich Quintana |
| XXX-X5047/ XXX-XX6263[3] | Jose A. Torres |
| XXX-X2273/ XXX-XX2195[4] | Jose A. Torres and Isabel Litovich Quintana JTWROS Express Credit Line |

18.     As of September 2010, JOSE and ELIZABETH funded their accounts with approximately **$8.3 million**.   These funds represented JOSE and ELIZABETH'S life savings, the proceeds from the sale of their New Jersey home, the proceeds from the sale of ELIZABETH'S parents' home, the inheritance JOSE received from his father as well as funds drawn on a credit line.

19.     JOSE and ELIZABETH repeatedly informed Aquino that they were not interested in high risk investments, and that they wanted investments that would preserve their principal and generate a modest degree of income.

20.     JOSE and ELIZABETH informed Aquino that that he was relying on the income from his investments to provide for JOSE'S share of his mother's living expenses, their children's education, and children's living expenses, amongst other things.

21.     JOSE further informed Aquino that the inheritance he received from his father should be treated as his father's legacy to JOSE and ELIZABETH'S children, and that they wanted to preserve that principal so that it could eventually be left to their children.

22.     Aquino assured JOSE and ELIZABETH that he would recommend secure investments that would generate income without losing their principal.

---

1 In May 2012, account no. XXX-X2208 was transferred into newly created account no. XXX-XX2144.

2 In May 2012, account no. XXX-X2236 was transferred into newly created account no. XXX-XX2164.

3 In May 2012, account no. XXX-X5047 was transferred into newly created account no. XXX-XX6263.

4 In May 2012, account no. XXX-X2273 was transferred into newly created account no. XXX-XX2195.

SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.

**b.   Aquino recommended a reckless and unsuitable strategy of dangerously concentrating Jose and Elizabeth's portfolio in high risk Puerto Rico bonds and Puerto Rico focused CEFs**

23.     As of August 2010, the portfolio JOSE and ELIZABETH transferred in to their newly created MORGAN STANLEY accounts was constructed entirely by Aquino, and comprised of investments selected and recommended by Aquino.

24.     Specifically, as of August 2010, the portfolio that JOSE and ELIZABETH transferred in to MORGAN STANLEY was concentrated in high risk Puerto Rico bonds and leveraged closed-end funds (CEFs) that were heavily concentrated in high risk Puerto Rico debt.

25.     The portfolio that JOSE and ELIZABETH transferred in to MORGAN STANLEY was also leveraged by virtue of a **$3.18 million** credit line that was collateralized by the securities and other assets in JOSE and ELIZABETH'S portfolio.  The use of leverage in JOSE and ELIZABETH'S portfolio was also recommended by Aquino.

26.     Upon transferring their portfolio to MORGAN STANLEY in 2010, Aquino recommended JOSE and ELIZABETH continue with his leveraged, speculative and unsuitable strategy of dangerously concentrating JOSE and ELIZABETH'S portfolio in high risk Puerto Rico bonds and leveraged CEFs that were heavily concentrated in high risk Puerto Rico debt.

27.     Aquino represented to JOSE and ELIZABETH that Puerto Rico bonds and Puerto Rico focused CEFs were safe and liquid investments that would generate income and preserve their principal.

28.     By May 2013, Aquino recommended a speculative and unsuitable strategy of dangerously concentrating **46%** of JOSE and ELIZABETH'S portfolio in high risk Puerto Rico debt and Puerto Rico focused CEFs.

29.     Furthermore, Aquino continued to recommend that JOSE and ELIZABETH concentrate their portfolio in high risk Puerto Rico debt.  For example, Aquino repeatedly recommended JOSE and ELIZABETH purchase additional Puerto Rico bonds at MORGAN STANLEY.

30.     By recommending that JOSE invest approximately **46%** of their MORGAN STANLEY portfolio in highly correlated, high risk and unsuitable Puerto Rico bonds and leveraged Puerto Rico CEFs, Aquino failed to recommend an adequately diversified portfolio and needlessly exposed JOSE and ELIZABETH to the credit risk of a single, financially troubled territory.

31.     The following chart reflects just some of the high risk and unsuitable Puerto Rico bonds Aquino recommended and sold to JOSE and ELIZABETH at MORGAN STANLEY as of May 2013:

| EXAMPLES OF UNSUITABLE PUERTO RICO BONDS RECOMMENDED BY AQUINO AT MORGAN STANLEY | PURCHASE DATE | AMOUNT INVESTED |
|---|---|---|
| Puerto Rico Aqueduct and Sewer Authority (PRASA) Series 2008A | September 23, 2010 | $203,500 |
| Puerto Rico Aqueduct and Sewer Authority (PRASA) Series 2012A | February 28, 2012 | $1,630,000 |
| Puerto Rico Aqueduct and Sewer Authority (PRASA) Series 2012A | February 28, 2012 | $1,087,320 |
| Commonwealth of Puerto Rico (GO) Public Improvement Refunding Series 2012A | March 8, 2012 | $98,254 |
| Puerto Rico Electric Power Authority (PREPA) Series 2012A | April 12, 2012 | $124,415 |
| Puerto Rico Sales Tax Financing Corporation (COFINA) Series 2007A | May 24, 2013 | $273,750 |
| **TOTAL** | | **$3,417,239** |

32.     To the extent that Aquino failed to obtain JOSE and ELIZABETH'S required prior authorization before executing transactions in their account, these transactions were unauthorized.

c. **Aquino misrepresented to Jose and Elizabeth that the Puerto Rico bonds and Puerto Rico focused CEFs were secure and low risk investments, when in reality they were just the opposite**

33.     Aquino repeatedly emphasized to JOSE and ELIZABETH that the Puerto Rico bonds and Puerto Rico focused CEFs he recommended were safe investments, and that they had nothing to worry about.

34.     In reality, Puerto Rico bonds and Puerto Rico focused CEFs were high risk investments and were unsuitable for JOSE and ELIZABETH. At the time of Aquino's recommendations, Puerto Rico suffered from long term financial and economic deficiencies that rendered its credit increasingly more speculative. The following are factors that have contributed and/or are indicative of Puerto Rico's rapidly deteriorating financial and economic condition:

> (1)   Puerto Rico has been in **recession since 2006**;
>
> (2)   **Puerto Rico's debt load remains spectacularly high and is estimated to be at least  $70 billion,**  higher than every state except New York and California and **its debt per capita is 10 times the average of the 50 states**;
>
> (3)   Puerto Rico residents earn relatively low incomes resulting in its **debt, as measured on the basis of personal income, equal to 26 times of the average state**;
>
> (4)   Puerto Rico has in excess of **$30 billion in unfunded pension liabilities** - the worst funded in the U.S.;
>
> (5)   Puerto Rico suffers from long-standing high **unemployment in excess of 13%** - the highest in the U.S.;
>
> (6)   Puerto Rico's **labor force participation rate is abysmally low and approximately 20% below the U.S.**;
>
> (7)   Puerto Rico is facing grim demographic realities including a shrinking population and an exodus off the island; and
>
> (8)   Puerto Rico is a territory and legally **unable to seek bankruptcy relief**.

35.     In addition, the Puerto Rico focused CEFs suffer from a number of inherent risks including liquidity risk, leverage and geographic concentration risk.

36.     CEFs differ from traditional open-end mutual funds in that open-end funds offer and redeem shares at the fund's net asset value ("NAV").   CEF prices can be at a discount or premium to the NAV.

37.     The Puerto Rico CEFs are organized as Puerto Rico corporations and are not registered with the Securities and Exchange Commission ("SEC").

38.     Unlike traditional mainland U.S. CEFs, the Puerto Rico focused CEFs are not traded on an exchange.   The brokerage firms affiliated with the Puerto Rico focused CEFs have been the only or dominant secondary market dealer or liquidity provider.

39.     The Puerto Rico focused CEFs are only available to Puerto Rico residents. Given the very limited amount of qualified buyers, these CEFs' liquidity risk was always inherently exceedingly high.

40.     Furthermore, the Puerto Rico focused CEFs are leveraged. The funds are generally permitted to borrow up to 100% of their equity. In other words, the CEFs are permitted to hold $2 of securities for every $1 of capital invested in the funds.   The funds pay to their shareholders the difference between their borrowing cost and the interest received on their holdings. The distributions paid by the Puerto Rico focused CEFs are mostly tax-free.

41.     In addition to their inherent liquidity risk and significant use of leverage, the Puerto Rico focused CEFs are also exposed to inherent geographic concentration risk. The funds are generally required to maintain at least 66% of their portfolio in Puerto Rico investments.

42.     The funds' prices were relatively stable through the summer of 2013. Consequently, investors, including JOSE, generally had no appreciable losses and believed that the funds they owned were relatively safe investments.

43.     In 2012 and 2013, the deterioration of Puerto Rico's financial condition resulted in a series of credit downgrades by the major ratings agencies. For example, in December 2012, Moody's downgraded Puerto Rico's credit rating two notches from Baa1 to Baa3, which is Moody's lowest rating above speculative grade (e.g. "junk") status. In March 2013, Standard & Poor's (S&P) downgraded Puerto Rico's credit rating to BBB-, its lowest rating above junk.

44.     Beginning in September 2013, Puerto Rico bonds and the Puerto Rico focused CEFs declined in value significantly.

45.     When JOSE expressed his concern to Aquino about his Puerto Rico bonds and Puerto Rico focused CEFs, Aquino assured JOSE that there was nothing to worry about, that JOSE and ELIZABETH would continue to receive their interest payments and that the value of their investments would eventually go back up.

46.     Aquino repeatedly recommended that JOSE and ELIZABETH continue to hold their unsuitable and dangerously concentrated portfolio of Puerto Rico bonds and Puerto Rico focused CEFs. Aquino consistently rationalized the decline as on "over reaction" by the market and that U.S. investors did not understand the Puerto Rico market.

47.     Regrettably, JOSE and ELIZABETH followed Aquino's recommendations to their severe detriment.

### d.  Aquino recommended Jose and Elizabeth continue to invest in high risk and unsuitable Puerto Rico bonds even after Puerto Rico bonds began plummeting in value

48.     Even after the Puerto Rico bond market's initial collapse in September 2013, Aquino continued to recommend a reckless investment strategy of dangerously concentrating JOSE and ELIZABETH'S portfolio in high risk Puerto Rico bonds.

49.     In early February 2014, Puerto Rico's debt was downgraded to "junk" status by S&P, Moody's and Fitch.

50.     In March 2014, Aquino recommended JOSE and ELIZABETH invest **$169,500** in high risk and unsuitable bonds issued by the Puerto Rico Sales Tax Financing Corporation, commonly known by its Spanish acronym "COFINA".

51.     Throughout this time period, Aquino repeatedly reassured JOSE and ELIZABETH that their investments were safe, their portfolio was diversified, and that they had nothing to worry about.

52.     In July 2014, Moody's and S&P downgraded Puerto Rico debt deeper into junk territory.

53.     On July 1, 2014, Moody's also downgraded COFINA two notches to Baa3, Moody's lowest rating above junk.

54.     On July 11, 2014, S&P downgraded COFINA _five_ notches to BBB.

55.     On September 17, 2014, Aquino again recommended JOSE and ELIZABETH invest an additional **$374,914** in high risk and unsuitable COFINA bonds.

56.     In order to induce JOSE and ELIZABETH to invest, Aquino represented that the COFINA bonds were very secure and that there was no way that COFINA would not pay its debt obligations.

57.     In February 2015, Moody's and S&P each downgraded COFINA debt multiple notches to B3 and B respectively. Moody's defines a credit rating of B3 as being four notches below investment grade. S&P defines a credit rating of B as being five notches below investment grade.

58.     On April 24, 2015, S&P downgraded COFINA's credit rating an additional two notches to **CCC+**[5], which is **seven notches below investment grade**.

---

5 S&P defines a credit rating of CCC+ as: "**An obligation rated 'CCC' is currently vulnerable to nonpayment, and is dependent upon favorable business, financial, and economic conditions for the obligor to meet its financial commitment on the obligation. In the event of adverse business, financial, or economic conditions, the**

59.     On May 21, 2015, Moody's downgraded COFINA's credit rating an additional three notches to Caa2, which Moody's defines as:

> **Obligations rated Caa are judged to be speculative of poor standing and are subject to very high credit risk**. (Emphasis added.)

60.     On June 10, 2015, Aquino recommended JOSE and ELIZABETH invest an additional **$237,502** in high risk COFINA junk bonds that were rated extremely speculative by Moody's and S&P.

61.     In order to induce JOSE and ELIZABETH to invest, Aquino emphasized that COFINA bonds were very secure investments, and represented that that COFINA generated more than enough funds to ensure compliance with its debt obligations.

62.     As they had done throughout their relationship, JOSE and ELIZABETH followed Aquino's recommendation.

### e.   Aquino recommended Jose and Elizabeth continue with Aquino's concentrated and leveraged investment strategy

63.     As JOSE and ELIZABETH'S portfolio declined in value, JOSE repeatedly expressed his growing concerns to Aquino about the losses in his portfolio.

64.     When JOSE expressed his concerns, Aquino repeatedly told JOSE "**don't panic**" and assured JOSE that the decline was only temporary.

65.     As JOSE and ELIZABETH'S portfolio continued to decline in 2014 and 2015, JOSE continued to express his concerns to Aquino.

66.     Aquino represented to JOSE that he had investigated the COFINA bonds in JOSE and ELIZABETH'S portfolio and represented that their bonds were very secure investments, and assured JOSE that the decline was simply a function of mainland U.S. investors and analysts who

---

**obligor is not likely to have the capacity to meet its financial commitment on the obligation**." (Emphasis added.)

did not understand the situation in Puerto Rico. Aquino repeatedly assured JOSE "**you'll see, everything will be fine**."

67.     Throughout this time period, the major credit ratings agencies continued to downgrade Puerto Rico's credit rating deeper into junk territory.

68.     In August 2015, the Puerto Rico Public Finance Corporation (PFC), a subsidiary of the Puerto Rico GDB, became the first Puerto Rico bond issuer to default on its debt obligations.

69.     In September 2015, S&P downgraded COFINA from CCC- to CC, which S&P defines as:

> **An obligation rated 'CC' is currently highly vulnerable to nonpayment. The 'CC' rating is used when a default has not yet occurred, but S&P Global Ratings expects default to be a virtual certainty, regardless of the anticipated time to default**. (Emphasis added.)

70.     Despite S&P's public pronouncement that a COFINA default was "**a virtual certainty**", Aquino continued assuring JOSE that his COFINA bonds were secure and recommended that he refrain from selling and continue to hold his COFINA bonds.

71.     Similarly, Aquino continued to recommend that JOSE and ELIZABETH hold their Puerto Rico bonds and Puerto Rico focused CEFs. Aquino repeatedly assured JOSE and ELIZABETH that they would continue to receive their interest payments, and that the prices of their Puerto Rico investments would recover.

72.     As recently as September 2016, MORGAN STANLEY continued to solicit JOSE to invest in additional COFINA bonds.

73.     In or about February 2017, Aquino contacted JOSE and represented to JOSE that MORGAN STANLEY supervisors were concerned about the concentration of Puerto Rico related investments in JOSE and ELIZABETH'S portfolio.   Aquino assured JOSE and ELIZABETH that there was nothing to be concerned about, and represented that MORGAN STANLEY was simply overreacting because MORGAN STANLEY did not understand the Puerto Rico market.

74.    Aquino recommended that JOSE and ELIZABETH continue to hold their high risk and unsuitable Puerto Rico bonds and Puerto Rico focused CEFs, and instead sell Banco Popular[6] preferred shares. JOSE and ELIZABETH followed Aquino's recommendation.

75.    In or about April 2017, Aquino contacted JOSE and ELIZABETH again and represented that MORGAN STANLEY supervisors were still concerned about the concentration of Puerto Rico exposure in JOSE and ELIZABETH'S portfolio.  Aquino again reassured JOSE and ELIZABETH that there was nothing to be concerned about, and that MORGAN STANLEY was simply overreacting due to a lack of knowledge about Puerto Rico.

76.    Aquino again recommended that JOSE and ELIZABETH continue to hold their high risk and unsuitable Puerto Rico bonds and Puerto Rico focused CEFs, and instead sell additional Banco Popular preferred shares. As they had done throughout their relationship, JOSE and ELIZABETH followed Aquino's recommendation.

77.    Throughout this time period, Aquino repeatedly sent JOSE emails and text messages, reassuring JOSE that he should remain calm because his COFINA bonds were secure, and everything would be ok.  For example, as recently as May 2017 Aquino sent JOSE a text message stating:

> Hola, les estare enviando unos buenos research de la situacion de PR… no creo que la cosa estara tan mala como se pinta. Leanlos y despues hablamos manana ...
>
> ***Hello, I will be sending you some good research about the PR [Puerto Rico] situation… I do not think the thing will be as bad as it looks. Read them and then we'll talk tomorrow…*** (Emphasis added.)

78.    Regrettably, JOSE and ELIZABETH followed Aquino's unsuitable recommendation with disastrous results.

---

6 Banco Popular is a financial services conglomerate that operates and is headquartered in Puerto Rico.

**SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.**

**f.** **Aquino recommended the excessive and unsuitable use of leverage**

79.     Aquino recommended the excessive and unsuitable use of leverage, which only further exacerbated the already significant risks associated with his reckless investment strategy.

80.     Specifically, Aquino recommended JOSE borrow funds from MORGAN STANLEY through the use of a credit line collateralized by the securities and other assets in JOSE and ELIZABETH'S portfolio.

81.     Securities backed loans are different from margin loans in that the loan proceeds may not be used to buy, hold or carry securities. These credit line loans are called non-purpose loans.

82.     Specifically, in or about August 2010, Aquino recommended that JOSE establish a credit line in excess of **$3.18 million** at MORGAN STANLEY to continue with the leveraged investment strategy Aquino previously implemented for JOSE and ELIZABETH.

83.     Aquino previously recommended that JOSE and ELIZABETH borrow approximately **$3.18 million** from a credit line loan and use some or all of the loan proceeds to invest in Puerto Rico bonds and/or Puerto Rico CEFs. Aquino represented to JOSE and ELIZABETH that they could borrow funds at a very low interest rate and earn the difference between the interest rate on the credit line and the yield generated on the investments purchased with the credit line loan proceeds.

84.     At MORGAN STANLEY, Aquino recommended that JOSE and ELIZABETH continue with the high risk and unsuitable leveraged strategy that Aquino had previously recommended and implemented in order to earn the "spread" between the interest rate on the credit line loan and the yield generated from the Puerto Rico bonds and CEFs.

85.     Based on Aquino's recommendation and representations, JOSE and ELIZABETH agreed to establish a credit line account with MORGAN STANLEY. The credit line was used to

pay off the outstanding loan balance on the loan Aquino had previously recommended to JOSE and ELIZABETH.

86.     Regrettably, Aquino's high risk, unsuitable and unnecessary loan strategy only served to exacerbate JOSE and ELIZABETH'S losses.

87.     This leveraged strategy was also illicit because non-purpose loan proceeds may not be used to purchase or carry securities or to reduce or retire loans used to purchase or carry securities. As such, to the extent the MORGAN STANLEY credit line was used to purchase or carry securities, or to reduce or retire loans used to purchase securities, it would have violated the terms of the loan.

88.     Aquino was most likely motivated solely by his own financial interests in recommending the leveraged strategy. Financial advisors like Aquino generally receive compensation for originating credit lines. Furthermore, by retaining assets under management, Aquino could maximize his commissions.

g.   **Aquino also sold Jose and Elizabeth a speculative and unsuitable junk bond issued by a financially troubled gaming company that soon went bankrupt**

89.     Throughout their relationship, JOSE repeatedly reiterated to Aquino that the funds he had entrusted to MORGAN STANLEY represented JOSE and ELIZABETH'S nest egg, as well as their legacy to their children.  JOSE repeatedly informed Aquino that there was too much at stake, and asked Aquino to diversify his portfolio to include more U.S. based investments.

90.     In March 2013, Aquino sold bonds issued by the Puerto Rico Electric Power Authority (commonly referred to by its acronym "PREPA") and the Puerto Rico Aqueduct and Sewer Authority (commonly referred to by its acronym "PRASA"), and realized a loss of **$172,106**.

91.     On March 25, 2013 Aquino used the proceeds from the sale of the PREPA and PRASA bonds, as well as other available cash to invest **$349,350** in a speculative and unsuitable junk bond issued by the financially troubled gaming company Harrah's Operating Co. (Harrah's).

92.     At the time of this purchase, the Harrah's bond was rated CCC by S&P, which is

**seven notches below investment grade**.

93.     S&P defines a credit rating of CCC as:

> **An obligation rated 'CCC' is currently vulnerable to nonpayment, and is dependent upon favorable business, financial, and economic conditions for the obligor to meet its financial commitment on the obligation. In the event of adverse business, financial, or economic conditions, the obligor is not likely to have the capacity to meet its financial commitment on the obligation.** (Emphasis added.)

94.     Aquino failed to obtain JOSE and ELIZABETH'S required prior authorization before executing this transaction in their account. As such, this purchase was unauthorized.

95.     Upon learning of the Harrah's purchase, JOSE contacted Aquino to express his concern about Aquino's purchase of the Harrah's bond without JOSE'S prior authorization and questioned Aquino about the bond's low rating.

96.     JOSE reiterated to Aquino that he was interested in low risk and investment grade investments.

97.     Aquino assured JOSE that Harrah's was a financially sound company, the bonds were purchased at a discount, and recommended against selling the Harrah's bond Aquino purchased in JOSE and ELIZABETH'S account.   Regrettably, JOSE followed Aquino's advice.

98.     Less than two months later, S&P downgraded Harrah's credit rating again to CCC-.

99.     In April 2014, S&P downgraded Harrah's <u>five notches</u> to C.[7]

100.    In December 2014, Harrah's entered into an agreement with creditors to restructure billions of dollars of debt, and in January 2015 Harrah's filed for bankruptcy.

---

7 S&P defines a credit rating of C as: "**An obligation rated 'C' is currently highly vulnerable to nonpayment, and the obligation is expected to have lower relative seniority or lower ultimate recovery compared with obligations that are rated higher.**" (Emphasis added.)

101.    On June 5, 2015, Aquino sold JOSE and ELIZABETH'S Harrah's bond, and realized a staggering and swift loss of **$224,966**. Aquino used the proceeds to invest in additional high risk and unsuitable COFINA bonds.

### h.    Morgan Stanley caused Jose and Elizabeth staggering losses

102.    Aquino and MORGAN STANLEY have caused JOSE and ELIZABETH to suffer devastating losses.

103.    In July 2016, Puerto Rico defaulted on its general obligation bond debt.

104.    In September 2016, Puerto Rico Commonwealth Government Development Bank (GDB) defaulted on its bond obligations.

105.    In 2015, Puerto Rico Electric Power Authority (PREPA) entered into an agreement with bondholders to restructure its debt. On July 2, 2017, PREPA defaulted on its obligations under the debt restructuring agreement and filed for a form of bankruptcy protection under the 2016 Puerto Rico rescue law known as PROMESA (Puerto Rico Oversight, Management, and Economic Stability Act.)

106.    In May 2017, COFINA also defaulted on its bond obligations and ceased making interest payments.

107.    The Puerto Rico bonds and Puerto Rico focused CEFs that Aquino recommended to JOSE and ELIZABETH are currently worth just pennies on the dollar.

108.    The following chart reflects some, but not all of the losses caused by Aquino and MORGAN STANLEY'S wrongful conduct:

| EXAMPLES OF UNSUITABLE INVESTMENTS RECOMMENDED BY AQUINO | LOSSES CAUSED BY AQUINO[8] |
|---|---|
| Puerto Rico Fixed Income Fund II | $794,076 |
| Puerto Rico Fixed Income Fund | $579,798 |
| Puerto Rico Fixed Income Fund IV | $483,710 |
| Puerto Rico Sales Tax Financing Corporation (COFINA) | $271,269 |

---

8 For the purposes of this Statement of Claim, the above chart reflects both realized and unrealized losses.

SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.

| | |
|---|---|
| First Subordinate Series 2010C | |
| Harrah's Operating Company | $224,966 |
| Puerto Rico Sales Tax Financing Corporation (COFINA) First Subordinate Series 2009A | $163,711 |
| Puerto Rico Aqueduct and Sewer Authority (PRASA) Series 2012A | $115,177 |
| Puerto Rico Fixed Income Fund III | $121,630 |
| Tax Free Puerto Rico Fund | $76,908 |
| Puerto Rico Aqueduct and Sewer Authority (PRASA) Series 2008A | $65,200 |
| Puerto Rico Sales Tax Financing Corporation (COFINA) Series 2007C | $58,570 |
| Puerto Rico Aqueduct and Sewer Authority (PRASA) Series 2012A | $53,954 |
| Puerto Rico Sales Tax Financing Corporation (COFINA) Series 2007B | $57,500 |
| Commonwealth of Puerto Rico (GO) Public Improvement Refunding Series 2012A | $31,876 |
| Puerto Rico Investors Tax Free Fund III | $29,030 |
| **TOTAL** | **$3,127,375** |

109.    To make matters worse, not only did JOSE and ELIZABETH lose more than **$3.1 million** of irreplaceable principal, but the interest payments and fund distributions that JOSE and ELIZABETH relied upon from their Puerto Rico bonds and Puerto Rico focused CEFs have virtually ceased.

110.    JOSE and ELIZABETH now face the terrifying prospect of not only having insufficient funds for their own retirement, but also being unable to afford JOSE'S elderly mother's care.

111.    As of the filing of this Statement of Claim, the CEFs are completely illiquid and cannot be sold.

112.    JOSE and ELIZABETH have no way to verify whether the CEF market prices reported on their account statements are accurate, as JOSE and ELIZABETH are unable to sell their CEF shares because there is no market for them.

113.    JOSE and ELIZABETH are now forced to hold the CEFs that cannot be sold and generate very little income.

SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.

114.    It goes without saying that Aquino failed to adequately disclose the extraordinary risks associated with the reckless investment strategy he recommended. Rather than acknowledge and disclose the enormous risks of investing in speculative Puerto Rico bonds, leveraged Puerto Rico CEFs, concentrating a portfolio in just a few issuers from a single financially troubled territory and engaging in the excessive use of leverage, Aquino did the just the opposite. Aquino abused the trust and confidence that JOSE and ELIZABETH placed in him and misled them to believe the investments he sold them and the strategies he recommended would preserve their capital.

115.    JOSE and ELIZABETH'S principal has been decimated as a result of Aquino's misrepresentations and other misconduct.

i.   **Aquino has been the subject of numerous similar customer complaints involving the same or similar Puerto Rico bonds and Puerto Rico focused CEFs**

116.    Regrettably, this case is not an isolated incident.

117.    A recently obtained copy of Aquino's CRD reveals that Aquino has recently been the subject of at least **10** other customer complaints and FINRA arbitration claims involving similar allegations of over concentration, unsuitability and misrepresentations related to the same or similar Puerto Rico bonds and Puerto Rico focused CEFs at issue. A copy of Aquino's CRD is attached hereto as exhibit "A".

118.    Had MORGAN STANLEY been adequately supervising its employees, including Aquino, JOSE and ELIZABETH'S losses could have been avoided.

119.    Upon information, Aquino is no longer employed by MORGAN STANLEY. The circumstances of Aquino's termination in light of the recent flood of customer complaints is not yet known.

120.    MORGAN STANLEY'S actions have caused Claimants damages between $1,000,000 and $5,000,000.[9]

## COUNT I - BREACH OF FIDUCIARY DUTY

121.    Claimants reallege and adopt paragraphs 1 through 120 above as if fully set forth herein.

122.    In the investment advisory and broker\customer relationship with JOSE and ELIZABETH, MORGAN STANLEY and its employees were under a fiduciary duty to JOSE and ELIZABETH.

123.    The conduct of MORGAN STANLEY was in direct contravention of the fiduciary duties owed by MORGAN STANLEY to JOSE and ELIZABETH.

124.    As a result of the breaches of fiduciary duty, JOSE and ELIZABETH have been damaged and MORGAN STANLEY is the proximate cause thereof.

125.    MORGAN STANLEY'S actions were willful, wanton and reckless and justify an award of punitive damages.

126.    JOSE and ELIZABETH have suffered emotional distress and mental anguish due to MORGAN STANLEY'S wrongful conduct.

WHEREFORE, JOSE A. TORRES and ISABEL LITOVICH QUINTANA, demand an Award against MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY for damages, attorney's fees, punitive damages, interest, costs and such other and further relief this Panel deems just and proper.

---

[9]    Damages are stated solely for the purpose of complying with FINRA Code of Arbitration Procedure section 12900.

SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.

## COUNT II – NEGLIGENCE

127.    Claimants reallege and adopt paragraphs 1 through 120 above as if fully set forth herein.

128.    At all times material hereto, MORGAN STANLEY owed the highest duty of care to JOSE and ELIZABETH in the handling of their accounts and recommending financial investments, in that JOSE and ELIZABETH enjoyed a fiduciary relationship with MORGAN STANLEY.

129.    MORGAN STANLEY breached its duty of care to JOSE and ELIZABETH.

130.    MORGAN STANLEY'S negligence is the direct and proximate cause of damages to JOSE and ELIZABETH.

131.    JOSE and ELIZABETH have suffered emotional distress and mental anguish due to MORGAN STANLEY'S wrongful conduct.

WHEREFORE, JOSE A. TORRES and ISABEL LITOVICH QUINTANA, demand an Award against MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY for damages, attorney's fees, interest, costs and such other and further relief this Panel deems just and proper.

## COUNT III - NEGLIGENT SUPERVISION

132.    Claimants reallege and adopt paragraphs 1 through 120 above as if fully set forth herein.

133.    At all times material hereto, MORGAN STANLEY had a duty to supervise its employees.

134.    MORGAN STANLEY breached its duty of care by failing to supervise its employees, including, but not limited to Aquino.

135.    MORGAN STANLEY'S negligence is the direct and proximate cause of damages to JOSE and ELIZABETH.

SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.

136.     JOSE and ELIZABETH have suffered emotional distress and mental anguish due to MORGAN STANLEY'S wrongful conduct.

WHEREFORE, JOSE A. TORRES and ISABEL LITOVICH QUINTANA, demand an Award against MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY for damages, attorney's fees, interest, costs and such other and further relief this Panel deems just and proper.

**COUNT IV – FRAUD**

137.     Claimants reallege and adopt paragraphs 1 through 120 above as if fully set forth herein.

138.     MORGAN STANLEY made false representations and material omissions.

139.     MORGAN STANLEY knew or should have known that the representations were false.

140.     MORGAN STANLEY intended that the representations induce JOSE and ELIZABETH to buy and/or hold securities.

141.     JOSE and ELIZABETH justifiably relied on MORGAN STANLEY'S representations and have been damaged.

142.     MORGAN STANLEY'S actions were willful, wanton and reckless and justify an award of punitive damages.

143.     JOSE and ELIZABETH have suffered emotional distress and mental anguish due to MORGAN STANLEY'S wrongful conduct.

WHEREFORE, JOSE A. TORRES and ISABEL LITOVICH QUINTANA, demand an Award against MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY for damages, attorney's fees, punitive damages, interest, costs and such other and further relief this Panel deems just and proper.

**SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.**

## COUNT V – BREACH OF CONTRACT

144.    Claimants reallege and adopt paragraphs 1 through 120 above as if fully set forth herein.

145.    JOSE and ELIZABETH entered into a contract with MORGAN STANLEY.

146.    MORGAN STANLEY breached its contract with JOSE and ELIZABETH.

147.    JOSE and ELIZABETH have been damaged by MORGAN STANLEY'S breach of contract.

148.    JOSE and ELIZABETH have suffered emotional distress and mental anguish due to MORGAN STANLEY'S wrongful conduct.

WHEREFORE, JOSE A. TORRES and ISABEL LITOVICH QUINTANA, demand an Award against MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY for damages, attorney's fees, interest, costs and such other and further relief this Panel deems just and proper.

## COUNT VI - VIOLATION OF SECTIONS 10(b) OF THE SECURITIES EXCHANGE ACT, AND RULE 10b-5 OF THE SECURITIES AND EXCHANGE COMMISSION

149.    Claimants reallege and adopt paragraphs 1 through 120 above as if fully set forth herein.

150.    In the sale of securities to JOSE and ELIZABETH as set forth above, MORGAN STANLEY has indirectly and directly:

a.    employed devices, schemes or artifices to defraud JOSE and ELIZABETH;

b.    made untrue statements of a material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c.    engaged in acts, practices and courses of conduct of business, which operated as a fraud and deceit upon JOSE and ELIZABETH.

SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.

151.    By reason of the foregoing, MORGAN STANLEY violated 15 U.S.C. §78j(b) and Rule 10b-5 promulgated by thereunder by the Securities and Exchange Commission.

152.    As a result of the foregoing, JOSE and ELIZABETH sustained substantial economic damages.

153.    WHEREFORE, JOSE A. TORRES and ISABEL LITOVICH QUINTANA, demand an Award against MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY for damages, rescission, interest, costs, attorney's fees, and such other and further relief this Panel deemsjust and proper.

## COUNT VII - VIOLATION OF THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT

154.    Claimants reallege and adopt paragraphs 1 through 120 above as if fully set forth herein.

155.    In connection with the rendering of investment advice and in connection with the offer and sale of securities to JOSE and ELIZABETH as set forth above, MORGAN STANLEY has indirectly and directly:

   a.    employed devices, schemes or artifices to defraud JOSE and ELIZABETH;

   b.    obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   c.    engaged in practices and courses of conduct of business, which operated as a fraud and deceit upon JOSE and ELIZABETH.

156.    As such, MORGAN STANLEY has violated Fla. Stat. §517.301.

157.    JOSE and ELIZABETH are entitled to rescission and/or statutory damages and attorney's fees pursuant to Fla. Stat. §517.211.

SONN & EREZ, PLC/ALDARONDO & LOPEZ-BRAS, P.S.C.

WHEREFORE, JOSE A. TORRES and ISABEL LITOVICH QUINTANA, demand an Award against MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY, for damages, rescission, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

### COUNT VIII - VIOLATION OF THE PUERTO RICO UNIFORM SECURITIES ACT

158.    Claimants reallege and adopt paragraphs 1 through 120 above as if fully set forth herein.

159.    MORGAN STANLEY offered and sold securities by means of false statements of material fact and by omitting to state material facts needed to prevent statements made, in the light of the circumstances under which they were made, from leading to misunderstanding by JOSE and ELIZABETH.

160.    Pursuant to 10 L.P.R.A. § 890(a)(2), JOSE is entitled to damages and/or rescission, costs and reasonable attorney's fees.

WHEREFORE, JOSE A. TORRES and ISABEL LITOVICH QUINTANA, demand an Award against MORGAN STANLEY SMITH BARNEY LLC D/B/A MORGAN STANLEY, for damages, rescission, interest, costs, attorney's fees, and such other and further relief this Panel deems just and proper.

## REQUEST FOR ALL PUBLIC PANEL

Claimants hereby request an All Public Panel in this arbitration proceeding.

Dated this ___ day of July 2017.

> SONN & EREZ
> *Attorneys for Claimants*
> SunTrust International Center
> 1 SE 3rd Avenue, Suite 1670
> Miami, FL   33131
> Telephone Number:   (305) 728-3320
> Toll Free Number:   (888) 840-1571
> Facsimile Number:   (786) 842-7549
>
> By: _____
> Jeffrey Erez, Esq.
> Florida Bar No.: 0102369
> jerez@sonnerez.com
>
>
> ALDARONDO & LÓPEZ-BRAS
> *Attorneys for Claimants*
> ALB Plaza, Suite 400
> 16 Las Cumbres Ave. (Road 199)
> Guaynabo, P.R. 00969
> Telephone: (787) 474-5447
> Facsimile:   (787) 474-5451
>
> By: _____
> Eliezer A. Aldarondo-López
> Puerto Rico Bar No. 16714
> Eliezer Aldarondo-Ortiz
> Puerto Rico Bar No. 5802