UNITED STATES DISTRICTCOURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:  1:19-cv-22977-COOKE/GOODMAN

JOSE A. TORRES AND
ISABEL LITOVITCH-QUINTANA,

        Petitioners,

vs.

MORGAN STANLEY SMITH BARNEY LLC
D/B/A MORGAN STANLEY

        Respondent.

_____/

### PETITIONERS' MOTION FOR SANCTIONS PURSUANT TO *HERCULES STEEL*

    Petitioners, Jose A. Torres and Isabel Litovitch-Quintana, through undersigned counsel, hereby file their Motion for Sanctions under B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 907 (11th Cir. 2006), and state as follows:

### STATEMENT OF THE CASE

    On July 16, 2019, an Arbitration Panel of the Financial Industry Regulatory Authority ("FINRA") entered an Arbitration Award against Morgan Stanley and in favor of Petitioners. In the Award, the Panel ordered Morgan Stanley to pay to Petitioners hefty and embarrassing monetary sanctions for its failure to produce— and disclose the existence of— highly relevant documents despite being ordered to do so by the Arbitration Panel.  The Panel correctly reasoned that Morgan Staley's actions resulted in "extreme prejudice" to Petitioners ("Claimants" in the Arbitration) "in preparing their case and asserting their claims."  See ECF No. 18-1, Award, pp. 3-4.  The amount of compensatory damages and sanctions awarded equaled roughly the losses sought by Petitioners in the arbitration.

    On July 17, 2019, Petitioners' filed a Motion to Confirm Arbitration Award under Section 9 the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. See ECF No. 1.  On August 9, 2019, Morgan Stanley filed a Motion to Vacate Arbitration Award under Sections 10(a)(2), 10(a)(3) and 10(a)(4) of the FAA, 9 U.S.C. §10(a)(2)-(4). See ECF No. 9. Petitioners filed their Response in Opposition to the Motion to Vacate on September 3, 2019. See Petitioners Response

in Opposition to Morgan Stanley's Motion to Vacate Arbitration Award ("Response in Opposition"), ECF No. 18.

## APPLICABLE LEGAL STANDARD

As explained in the Response in Opposition, and as Morgan Stanley is well aware, Congress' goals in enacting the FAA were the "enforcement of private agreements and [the] encouragement of efficient and speedy dispute resolution." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). See also, Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367-68 (11th Cir. 2005) ("The purpose of the FAA was –to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation'"(quoting Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141, F.3d 1434, 1440 (11th Cir. 1998)). To achieve its pro-arbitration policies, the FAA presumes the confirmation of arbitration awards and limits judicial intervention on private arbitration disputes. See Oxford Health Plans, LLC v. Sutter, 569 U.S. 564, 568 (2013) ("Under the FAA, courts may vacate an arbitrator's decision –only in very unusual circumstances.'"); AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007); Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1190 (11th Cir. 1995). Relevant here, the FAA confines judicial review of arbitration awards to only four circumstances, and effectively prohibits review for clear error of a manifest disregard of the law. See Southern Communications Services, Inc. v. Thomas, 720 F.3d 1352, 1358 (11th Cir. 2013); Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313 (11th Cir. 2010).

The statute also imposes certain obligations to ensure that the purposes of the FAA are achieved:

> The laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest. If we permit parties who lose in arbitration to freely relitigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less.
> B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 907 (11th Cir. 2006), abrogated on other grounds by Frazier, 604 F.3d at 1321.[1]

---

[1] The statute also directs federal courts to "expedite," and give "streamline treatment," to such proceedings. Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008).

As a result, the Court held in <u>Hercules Steel,</u> Courts "should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions." <u>Id</u>. at 913-914. Specifically, the Court explained:

> When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken. Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases. The more cases there are, like this one, in which the arbitrator is only the first stop along the way, the less arbitration there will be. If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later.
>
> Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions.
>
> <u>Hercules Steel</u>, 441 F.3d at 913-914.

Following <u>Hercules Steel</u>, both the Eleventh Circuit and this Honorable Court have imposed sanctions, in the form of attorneys' fees and costs reimbursements, where, as here, a party challenging arbitration did so without evidentiary support or controlling authority to support their position. <u>See</u> <u>e.g.</u> <u>World Business Paradise Inc. v. Suntrust Bank</u>, 403 F.App'x 468, 469-71 (11th Cir. 2010) (remanding with directions for imposition of sanctions where appellant failed to present grounds justifying vacatur of arbitration award, "provided no evidence to support their claims of partiality and misconduct" of arbitrator, and brought frivolous appeal); <u>Inversiones y Procesadora Tropical Inpotsa, S.A. v. Del Monte International GmbH</u>, Case No. 16-24275, 2018 WL 8369103 (S.D. Florida, 2018) (sanctioning party for pursuing appeal challenging an arbitrator's alleged disregard of the law); <u>Fornell v. Morgan Keegan & Co.</u>, No. 6:12-CV-38-ORL-28TBS, 2012 WL 3155727, at *3 (M.D. Fla. Aug. 3, 2012) (sanctioning brokerage firm because it was not objectively reasonable to assert partiality or misbehavior of Arbitrator because of their failure to disclose past involvement in litigation as the information was publicly available and did not "constitute information which would lead a reasonable person to believe that a potential conflict exists.'" (quoting <u>Univ. Commons-Urbana, v. Universal Contractor Inc.</u>, 304 F.3d 1331,1339 (11th Cir. 2012); <u>Dunn v. Citigroup Global Markets, Inc</u>., Case No. 10-81469, 2011 WL 13227889 (S.D. Florida, 2011) (noting that "costs and attorney's fees associated with these vacatur proceedings is an appropriate sanction" and

awarding such sanction because "that the arbitrators manifestly disregarded [the] law, is no longer a basis in this Circuit for vacating an arbitration award); and, Schaden v. Bank of America, Case No. 08-21534, 2008 WL 11469260 at *12 (S.D. Florida, 2008) (awarding sanctions because "Bank of America's arguments in furtherance of its motion to vacate all essentially are arguments that the arbitrator erred or misapplied the law in entering her award in favor of Petitioners. But it is well-settled that courts cannot vacate an award on the basis of errors of law or interpretation").

## ARGUMENT

In this case, Morgan Stanley insisted on arbitration and received precisely what it bargained for: a speedy and fair resolution of this case embodied in a reasoned decision. Desperate to escape an embarrassing and well-deserved multi-million dollar monetary sanction and Award, Morgan Stanley now drags the dispute through the court system without an objectively reasonable belief it will prevail. Morgan Stanley's arguments boil down to two contentions: (1) that two arbitrators failed to comply with FINRA rules on disclosures, which demonstrates "evident partiality" or "other misbehavior" that "prejudiced" Morgan Stanley, and (2) that the Panel's award of monetary sanctions misapplies a FINRA rule and disregarded the Supreme Court's holding in Goodyear Tire & Rubber Co. v. Haeger, 137 S.Ct. 1178 (2017). As discussed in Petitioners' Response to the Motion to Vacate, which arguments Petitioners respectfully incorporate herein, Morgan Stanley's challenge is patently baseless and frivolous. Morgan Stanley did not properly preserve the issues now before the Court by raising it before the Panel despite having ample opportunity to do so, does not come remotely close to meeting the evidentiary burden to establish partiality or bias, and repeatedly plays ostrich to well-settled and dispositive case law. See Borowski v. DePuy, a Div. of Boehringer Mannheim Co., 850 F.2d 297, 304–05 (7th Cir. 1988) ("the ostrich-like tactic of pretending that potentially dispositive authority against [his] contention does not exist,' precisely the type of behavior that would justify imposing Rule 11 sanctions" (quoting Szabo Food Service v. Canteen Corp., 823 F.2d 1073, 1081 (11th Cir. 1988)). Pursuant to Hercules Steel, and the Court's inherent authority to impose sanctions, Morgan Stanley should be directed to compensate Petitioners for the attorneys' fees and costs incurred as a result of Morgan Stanley's frivolous Motion to vacate.

On the partiality issue, Morgan Stanley is substantially similar to the approach undertaken by the sanctioned brokerage firm in Fornell. Notwithstanding the fact that a party on

the losing end of an arbitration award cannot rely on pre-existing public information to allege impartiality, see Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs., 892 F.3d 501, 505–07 (2d Cir. 2018) ("[W]e have declined to vacate awards because of undisclosed relationships where the complaining party should have known of the relationship, or could have learned of the relationship just as easily before or during the arbitration rather than after it lost its case" (internal quotation marks omitted)); Lagstein v. Lloyd's, London, 607 F.3d 634, 646 (9th Cir. 2010) ("We decline to create a rule that encourages losing parties to challenge arbitration awards on the basis of pre-existing, publicly available background information on the arbitrators that has nothing to do with the parties to the arbitration"), Morgan Stanley went on with its challenge on the basis of pre-existing public information.  Further, on the ultimate question— that "[t]he partiality alleged must be 'direct, definite and capable of demonstration rather than remote, uncertain and speculative,'" Univ. Commons-Urbana, Ltd., 304 F.3d at 1339 (quoting Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197, 1204 (11th Cir. 1982))— Morgan Stanley, like the brokerage firm in Fornell, fails to even come remotely close to meeting the applicable standard. Morgan Stanley simply argues for partiality or bias merely because each of the two arbitrators allegedly failed to disclose an old and remote court proceeding unrelated to securities litigation or to the parties to the Arbitration. See also World Business Paradise Inc. v. Suntrust Bank, 403 F.App'x at 469-71 (finding sanctions to be appropriate when party "provided no evidence to support their claims of partiality and misconduct" of arbitrator, and brought frivolous appeal). Morgan Stanley's conduct is even more egregious in this case because it cannot even establish a failure to disclose at all— yet attempts to mislead the Court into ruling otherwise by conflating FINRA rules and misrepresenting facts.

Morgan Stanley's challenge under §10(a)(4) to monetary sanctions is even more frivolous. Morgan Stanley itself admitted to the arbitration panel that "FINRA Rule 12511 and 12212 govern sanctions and permit a Panel to award sanctions when a party commits discovery abuse by failing to comply with the provisions of the FINRA Code or an order of the Panel." ECF No. 19-13, Morgan Stanley's Opposition to Claimants' Motion for Sanctions, p. 9.  Despite ample opportunities to address Petitioners' request that multi-million dollar sanctions be levied against it, Morgan Stanley never argued to the Panel the arguments it now makes under the FAA; now effectively requiring the Court and Petitioners to unnecessarily expend time and effort belatedly addressing the issue. Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen,

Dist. Council of Wisconsin & Its Local 5, 724 F.3d 939, 944–45 (7th Cir. 2013) ("The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award" (quoting Ganton Techs., Inc. v. UAW, 358 F.3d 459, 462 (7th Cir.2004)).

Moreover, Morgan Stanley is well aware that because "neither an 'incorrect legal conclusion,' White Springs, 660 F.3d at 1280, nor a 'manifest disregard of the law,' Frazier, 604 F.3d at 1323, as grounds for vacating or modifying an award, we are left, under § 10(a)(4)," Thomas, 720 F.3d at 1360 (quoting White Springs Agricultural Chemicals, Inc. v. Glawson, 660 F.3d 1277, 1280 (11th Cir. 2011); Frazier, supra; 9 U.S.C. § 10(a)(4)). Yet, like the parties in Dunn and Schaden, Morgan Stanley plays ostrich to this well settled case law and makes a challenge that boils down to its disagreement with the Panel's interpretation of a FINRA rule, and its allegation that the Panel disregarded "applicable law." Morgan Stanley's attempt to couch its challenge as one under §10(a)(4) is unavailing and such sleight of hand tactics should be dealt with severely. Here all that matters is whether the Panel's actions were authorized, not if their ultimate ruling was correct or not. See Thomas, supra. As Morgan Stanley admitted to the Panel, without limitations; "FINRA Rule 12511 and 12212 govern sanctions and permit a Panel to award sanctions when a party commits discovery abuse by failing to comply with the provisions of the FINRA Code or an order of the Panel." ECF No. 18-13. The parties also empowered the Panel with the exclusive authority to interpret FINRA Rules, and determine the amount of sanctions. This is perfectly legal and Morgan Stanley knows it.[2] Hence, they had to resort to a manifest disregard theory couched under the FAA.

---

[2] See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 58 (1995) ("if contracting parties agree to include claims for punitive damages within the issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration"); White Springs, 660 F.3d at 1282, n. 2 ("The Federal Rules of Civil Procedure, however, did not govern the award at issue here. The issue of attorneys' fees was a substantive claim made pursuant to the parties' arbitration agreement[.] . . . To the extent that White Springs also bases its challenge to the panel's award of expert fees on Rule 54 and the related federal statutes, the same reasoning applies and federal law does not control."); Hamstein Cumberland Music Group v. Williams, 532 Fed. Appx. 538, 543 (unpublished) (5th Cir. 2013) (Upholding a $500,000 sanctions award because "[t]he scope of an arbitrator's authority is a function of *both* the arbitration agreement *and* the parties' submissions, which include both formal, written submission agreements and merely asking the arbitrators to decide an issue. . . . If the parties are permitted to modify the scope of their contractual agreement by submitting additional issues to the arbitrator, then surely the parties

Notably, Morgan Stanley also made a material misrepresentation of fact to the Court on the sanctions issue. Morgan Stanley represents that "[e]ven in regulatory enforcement matters brought by FINRA, the maximum recommended fine for a failure to produce documents . . . is $77,000." Motion to Vacate, ECF No. 9, p. 17, n. 17.  However, a FINRA regulatory enforcement matter against Morgan Stanley resulted in a payment of $12.5 million by Morgan Stanley, inclusive of a $3 million fine for "failure . . . to provide . . . documents to claimants in discovery in arbitration proceedings[.]" ECF No. 18-22, FINRA's Letter of Acceptance Waiver and Consent No. 2005001449202.

## CONCLUSION

The situation at bar is not an isolated incident by Morgan Stanley or its law firm Greenberg Traurig. FINRA itself fined Morgan Stanley for failing to turn over relevant documents in arbitration proceedings, as previously discussed. See ECF No. 18-22.  Similarly, in Coleman(Parent) Holdings, Inc. v. Morgan Stanley, Inc., a Florida court entered a default judgment against Morgan Stanley for, *inter alia*, "deliberately and contumaciously violat[ing] numerous discovery orders . . . hid[ing] information about its violations and coach[ing] witnesses to avoid any mention of additional, undisclosed problems with its compliance with the Agreed Order. . . . As outlined in this Order, MS & Co. employees, and not just counsel, have participated in the discovery abuses. The prejudice to [its opponent] from these failings cannot be cured. . . . The other discovery abuses outlined call into doubt all of MS & Co.'s discovery responses. *The judicial system cannot function this way."* Coleman(Parent) Holdings, Inc., No. CA 03-5045 AI., 2005 WL 674885 (Fl. Cir. Ct, 15th Cir. 2012) (emphasis in original). In addition, in Coquina Investments v. Rothstein, this very Court sanctioned Greenberg Traurig and its client TD Bank for its practices relating to the production (or lack thereof) of documents and electronically-stored information. See Coquina Investments, No. 10-60786-CIV, 2012 WL 3202273, at *17 (S.D. Fla. Aug. 3, 2012), aff'd sub nom. Coquina Investments v. TD Bank, N.A.,

---

may, jointly, empower the arbitrator to issue certain sanctions" (emphasis in original)); Certain Underwriters at Lloyd's London v. Argonaut Ins. Co., 264 F.Supp.2d 926, 944 (N.D. California, 2003) ("That is not to say that the parties cannot agree by arbitration contract to confer on the arbitrator power to impose monetary sanctions for non-compliance."); Compania Chilena de Navegacion Interoceanica v. Norton, Lilly & Co*.,* 652 F.Supp. 1512, 1516 (S.D.N.Y.1987) (holding that Arbitrators have broad discretion in fashioning remedies and "-may grant equitable relief that a Court could not." (citing Sperry International Trade, Inc. v. Government of Israel*,* 532 F.Supp. 901, 905 (S.D.N.Y.), *aff'd,* 689 F.2d 301 (2d Cir.1982)).

760 F.3d 1300 (11th Cir. 2014). Specifically, the Court directed Greenberg Traurig and TD Bank to pay reasonable attorney's fees and costs "for the added expense caused by Greenberg Traurig's and TD Bank's discovery violations and abusive conduct." Id. at 17.

Morgan Stanley and its attorneys' conduct here was no different.  It took a risk in that withholding highly relevant documents it may avoid paying Petitioners damages in excess of $3 million, yet it got caught, and was directed to compensate Petitioners for more or less that same amount because of the "extreme prejudice" it cause Petitioners "in preparing their case and asserting their claims." See ECF No. 18-1, Award, pp. 3-4.  Unlike in those cases, however, here it took it a step further by now seeking a frivolous appeal under the FAA without any real legal basis for doing so.

WHEREFORE, for the for foregoing reasons, the Honorable Court should direct Morgan Stanley to pay Petitioners' reasonable attorneys' fees and costs incurred in defending the Motion to Vacate.  The Court should also grant Petitioners twenty days from the date of such order to file an itemized statement of fees and costs.

Respectfully submitted,

| | |
|---|---|
| */s/ Jeffrey Erez, Esq.* | */s/ Eliezer A. Aldarondo-López, Esq.* |
| Jeffrey Erez, Esq. | Eliezer A. Aldarondo-López, Esq. |
| FBN 102369 | *Admitted Pro Hac Vice* |
| **SONN & EREZ, PLC** | **ALDARONDO & LÓPEZ-BRAS, P.S.C.** |
| E-Mails:  jerez@sonnerez.com | E-Mails: eliezer.aldarondo@gmail.com |
| jerez@erezlaw.com | eliezer.aldarondo@alblegal.net |
| SunTrust International Center | 16 Las Cumbres Avenue (199) |
| 1 SE Third Avenue, Suite 1670 | Guaynabo, PR  00969 |
| Miami, FL 33131 | Telephone: (787) 474-5447 |
| Telephone: (305) 728-3320 | |

September 10, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that this 10th day of September, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

s/Jeffrey Erez
Jeffrey Erez
