IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:19-cv-22977-MGC

JOSE S. TORRES AND
ISABEL LITOVITCH-QUINTANA,

                Petitioners,

v.

MORGAN STANLEY SMITH BARNEY LLC
D/B/A MORGAN STANLEY,

                Respondent.
_____/

**MORGAN STANLEY SMITH BARNEY'S RESPONSE IN OPPOSITION TO
MOTION FOR SANCTIONS PURSUANT TO HERCULES STEEL
AND SUPPORTING MEMORANDUM OF LAW**

Respondent, Morgan Stanley Smith Barney LLC d/b/a Morgan Stanley ("MSSB"), submits its Response in Opposition to Petitioners' Motion for Sanctions Pursuant to Hercules Steel (the "motion for sanctions").

## I. INTRODUCTION

MSSB filed a well-founded motion to vacate based on the facts and controlling law that require the arbitration award to be vacated under both 9 U.S.C. § 10(a)(2) and § 10(a)(4). In response, Petitioners filed their baseless motion for sanctions based on B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 913-14 (11th Cir. 2006), which required Petitioners to show that sanctions are warranted because there was "no sound basis in the law applicable to arbitrator awards" and MSSB is "without an objectively reasonable belief it will prevail." Not only do Petitioners fail to meet this high standard, but it is Petitioners who have ignored the statutory grounds asserted in MSSB's Motion to Vacate, made arguments contrary to controlling Eleventh Circuit law, and mischaracterized the proceedings before the arbitrators. MSSB's Motion to Vacate should be granted for the reasons set forth in its Motion and Reply.

MSSB certainly had a sound basis under applicable law and a reasonable belief it would prevail where as here, two arbitrators failed to make material disclosures as required by FINRA rules and the FAA. The Supreme Court in Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 148-49 (1969), other courts and in particular the Eleventh Circuit have repeatedly emphasized the importance of arbitrator disclosure. See, e.g., Univ. Commons-Urbana, Ltd. v. Universal Construction, Inc., 304 F.3d 1331, 1338 (11th Cir. 2002) ("the law imposes the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias.") (citations omitted). MSSB's Motion is based on that authority. In fact, the arbitrators' failure to make the required disclosures under FINRA rules created a presumption of materiality requiring vacatur. Citigroup Global Markets, Inc. v. Berghorst, 2012 WL 5989628, *3 (S.D. Fla. Jan. 20, 2012). For this reason alone, the motion for sanctions is without any basis and must be denied.

As to the failures to disclose, Arbitrator Jill Pilgrim (who is an attorney) failed to disclose, as required, the fact that she had been named in a foreclosure action brought by CitiMortgage, Inc., which was an affiliate of Citigroup Global Markets, Inc. ("CGMI") – a key entity in the underlying arbitration and a party to the joint venture MSSB. CGMI was also the broker-dealer that acted as custodian, executed trades and was a lender for

1

Petitioners' investment accounts when they were opened (and was prominently identified in many of the exhibits introduced in the arbitration, e.g. ECF No. 9-6 and 9-10). In fact, services provided by CitiMortgage, Inc. were offered in the Welcome Book that was provided to Petitioners upon opening their MSSB accounts, which was introduced as an exhibit in the arbitration. [ECF No. 9-8 at JTORRES009583 (also providing a detailed list of other services and roles provided by CGMI in connection with Petitioners' accounts at JTORRES009636)].

Arbitrator Pilgrim's undisclosed foreclosure action was filed at the same time Petitioners were allegedly losing money due to an "illegal loan" scheme involving CGMI that was a central issue in the arbitration. Arbitrator Pilgrim's foreclosure and subsequent loan modification with CitiMortgage, an affiliate of CGMI were expressly required to be disclosed under multiple FINRA rules. Discovery in this action has also revealed that Arbitrator Pilgrim was served with this foreclosure complaint and sent CitiMortgage's attorneys a contentious letter complaining about the foreclosure. [ECF No. 22-2]. This discovery only strengthened MSSB's grounds for vacatur and removed any doubt as to whether Arbitrator Pilgrim was aware of the CitiMortgage foreclosure. Arbitrator Pilgrim was not only aware of it, she was angry about it. These facts unquestionably demonstrate Arbitrator Pilgrim violated FINRA's disclosure rules and the FAA, and vacatur is required under 9 U.S.C. § 10(a)(2). It is troubling that Petitioners have not withdrawn their Motion in light of these facts.

Separately, despite an express FINRA rule requiring disclosure of personal litigation, Arbitrator Ruiz (also an attorney) failed to disclose that she had brought a medical malpractice action for herself and her deceased child, and that those claims were dismissed with prejudice both at trial and on appeal based solely on the Puerto Rico statute of limitations – which was the key legal defense MSSB asserted in the arbitration. Instead, Arbitrator Ruiz made an incomplete and misleading disclosure referencing only a claim on behalf of another minor son that was voluntarily settled with court approval. Although FINRA Rules require ongoing disclosure of non-securities related litigation (including disclosure of all details that might have relevance to the pending arbitration), Ms. Ruiz made no mention that the very same Puerto Rico statutes of limitation at issue in the arbitration had been enforced to extinguish the claims she brought for herself and a deceased son. This experience was not merely a preconceived notion on an issue of law or a prior legal ruling as an arbitrator, but rather a very personal and direct experience with the key legal defense as a party to the

2

litigation. MSSB had every right to know that Arbitrator Ruiz was directly impacted by the key legal defense in the arbitration, and this failure to disclose creates an impression of bias and independently requires vacatur under 9 U.S.C. § 10(a)(2).

MSSB's motion to vacate also established that vacatur is required because the Award imposed a punitive $3 million discovery sanction that is nearly twelve times the compensatory damages award of $261,421.63, almost six times the Petitioners' claimed attorneys' fees for the entire case, and nearly $1 million more than the sanctions Petitioners requested. The sanctions arose because Petitioners' counsel mischaracterized and reneged on a written agreement on discovery that did not require the production of the emails at issue. [ECF No. 9-35 and 36]. Contrary to Petitioners' unsupported assertion, the power of FINRA arbitrators to sanction is not unlimited, but rather is confined by "applicable law." [FINRA Rule 12212(a), ECF No. 9-49]. Monetary discovery sanctions that do not coerce compliance or remedy an expense tied to the alleged improper conduct are criminal in nature and violate the law if issued without full criminal procedures. Goodyear Tire v. Haeger, 137 S. Ct. 1178, 1186 (2017). The sanction here was not coercive (the documents had been produced months earlier), the sanction was not remedial and had no bearing on Petitioners' costs or fees for the discovery issue (there was no spoliation issue and Petitioners stated in writing that the discovery issue required "several additional and unnecessary hours" of additional time at the hearing and approximately a "dozen" additional hours to address, ECF No. 9-45 at 10), and the sanction was undeniably punitive in violation of applicable law. MSSB therefore presented the facts and law that arbitrators exceeded their authority and vacatur is required under 9 U.S.C. § 10(a)(4).

MSSB also established that the sanction award exceeded the arbitrators' authority because it awarded an arbitrary amount of sanctions that exceeded even Petitioner's unjustified request for $2,050,000 in sanctions. See Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649 (5th Cir. 1979) (vacating award for awarding damages that had not been sought). Petitioners have not – and cannot – dispute that they did not seek more than $2,050,000 in sanctions. Because the Award of $3 million in sanctions was clear and unambiguous, there is no doubt that the arbitrators awarded far more than the amount sought (which itself was excessive and in violation of applicable law) and exceeded their authority.

3

Confronted with these facts and the law, Petitioners resorted to a number of arguments that are inconsistent with Eleventh Circuit authority. For example, Petitioners suggest that MSSB itself should have discovered the information the arbitrators failed to disclose, but in this Circuit there is no such duty. Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197, 1204 (11th Cir. 1982). Nor does the Eleventh Circuit recognize waiver in such circumstances. Id. Petitioners similarly suggested that MSSB bore the burden proving actual bias on the part of the arbitrators. It does not. See Commonwealth Coatings, 393 U.S. at 150 (arbitrators "not only must be unbiased but also must avoid even the appearance of bias"); Berghorst, 2012 WL 5989628 at *3 ("To satisfy the 'evident partiality' standard, a party challenging an arbitration award *need not show actual bias* on the part of an arbitrator.").

Petitioners further cited to sanctions cases involving completely unsupported motions to vacate that have no relevance to this dispute. For example, Petitioners cite cases where parties seeking vacatur relied on extinct non-statutory grounds for vacatur (such as manifest disregard of the law) that had been expressly rejected by the Eleventh Circuit, but Morgan Stanley's Motion to Vacate does not rely on the manifest disregard of the law standard. Moreover, Morgan Stanley's Motion is supported by specific facts and record cites and relies on statutory grounds under the FAA that are fully recognized and enforced in this Circuit. If anything, Petitioners' cases sanctioning parties for making arguments that have been rejected in the Eleventh Circuit could only support sanctions *against Petitioners*, who in opposing vacatur have repeatedly made arguments that have been rejected in this Circuit. For these reasons, and those set forth below, the Court must deny the motion for sanctions.

## MEMORANDUM OF LAW

I. **MSSB'S MOTION TO VACATE ESTABLISHED THAT TWO ARBITRATORS EXHIBITED EVIDENT PARTIALITY BY FAILING TO MAKE REQUIRED AND MATERIAL DISCLOSURES**

There is "a sound basis in the law applicable to arbitration awards" for MSSB's Motion to Vacate because the FAA specifically authorizes a court to vacate an arbitration award where the arbitrators have exhibited evident partiality by failing to make required disclosures. 9 U.S.C. § 10(a)(2) (vacatur appropriate "where there was evident partiality or corruption in the arbitrators"). The FAA's disclosure requirements arise from the Supreme Court's seminal decision of Commonwealth Coatings:

4

> It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases, but ***we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges***, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that ***arbitrators disclose to the parties any dealings that might create an impression of possible bias***.

393 U.S. at 148-9 (emphasis added).

Applying this standard, the Eleventh Circuit has held that vacatur is appropriate if "***the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists.***" Univ. Commons, 304 F.3d at 1339; Middlesex, 675 F.2d at 1201 ("The Commonwealth Coatings holding has been interpreted as somewhat analogous to a *per se* rule or a rebuttable presumption requiring the award to be set aside once it is established that the arbitrator actually knew of, yet failed to disclose potentially prejudicial facts which could impair his judgment.").

An arbitrator's incomplete or misleading disclosures are insufficient. "[T]he irreducible minimum requirement of Commonwealth Coatings is full disclosure." Continental Ins. Co. v. Williams, 1986 WL 20915, *5 (S.D. Fla. Sept. 17, 1986) (vacating an award because an arbitrator's disclosure that he had known a party's counsel "for a while" was "decidedly unilluminating of relationships between the parties"). Williams also held that the party seeking vacatur need not prove they would have challenged the arbitrator had there been disclosure – the mere failure to disclose requires vacatur. Id. ("Had such [required] disclosures been made, Continental's counsel may well have considered [the arbitrator] highly impartial and have chosen to proceed with the hearing. Continental, however, was not given the opportunity to make such an election.").

As MSSB detailed in its Motion to Vacate, to implement the FAA's mandate, FINRA has adopted robust disclosure requirements with checklists and directions to arbitrators regarding disclosure. In Berghorst, the court, relying on those FINRA requirements, ruled that failure to make the required disclosures created a presumption of materiality requiring vacatur. 2012 WL 5989628 at *3.

The Motion to Vacate met these vacatur standards and MSSB had an objectively reasonable belief it would prevail. This is precisely the type of case where the arbitrators' non-

5

disclosures and misleading disclosures were direct and material. Instead, it is Petitioners who lack any objective basis to argue that the arbitrators were not required to make the disclosures under FINRA's disclosure rules. The FINRA Checklist and Oath of Arbitrator required arbitrators to disclose the answer to the question: "Has any lender ever instituted foreclosure proceedings involving you or a property owned in whole or in part by you directly or indirectly? If yes, please provide the current status." [ECF No. 8-19 at 5]. Arbitrator Pilgrim did not disclose the CitiMortgage foreclosure and her failure was compounded by the fact that this action created an adverse relationship with the affiliate of a party.[1] Further, as discussed above, the discovery obtained in this matter shows that Arbitrator Pilgrim not only knew about the CitiMortgage foreclosure, but wrote a letter to CitiMortgage's attorney complaining about it. [ECF 22-2]. Nothing Petitioners argue changes these facts.

As to Arbitrator Ruiz, she made incomplete and misleading disclosures regarding the dismissal of claims brought on her behalf and on behalf of her deceased son. FINRA's Arbitrator Checklist required her to disclose the answer to the question: "Have you ever been a party to a non-investment related lawsuit?" [ECF No. 8-27 at 14]. The Checklist further required her to "Provide a full explanation to any question(s) to which you provided a "yes" response." [ECF No. 8-27 at 2]. FINRA further instructs that disclosure must be made even when the subject matter is distinct from that in the arbitration and "[i]t is better to be over inclusive and provide the parties with more information rather than too little information." [ECF No. 8-24]. FINRA Rule 12405(a) also required arbitrators to disclose "any circumstances which might preclude [them] from rendering an objective and impartial determination in the proceeding." [ECF No. 8-17]. That obligation is continuing in nature and requires supplemental disclosures "at any stage of the proceeding" whenever the basis for a disclosure arises:

---

[1] The importance of disclosing potential conflicts with affiliated parties is expressly addressed in FINRA guidance provided to arbitrators. See, FINRA Publication, Neutral Corner, Volume 4 – 2011 at 13 ("Disclosure: The Cornerstone of Integrity and Fairness in Arbitration"). [ECF No. 8-24]. The Arbitrator Checklist expressly asks: "Do you, your spouse, or an immediate family member currently have a non-securities related account (e.g., checking or savings accounts or loans) with a party to this arbitration or with an entity that is affiliated with that party? For example, in recent years some banks have acquired broker-dealers and may be the parent of the broker-dealer firm that is a party in this case." [ECF No. 8-19 at 5].

> The obligation to disclose interests, relationships, or circumstances that might preclude an arbitrator from rendering an objective and impartial determination described in paragraph (a) is a continuing duty that requires an arbitrator who accepts appointment to an arbitration proceeding to disclose, at any stage of the proceeding, any such interests, relationships, or circumstances that arise, or are recalled or discovered.

FINRA Rule 12405(b) [ECF No. 8-17].

FINRA advised arbitrators that any doubt should be resolved in favor of disclosure. The importance of these disclosure requirements is described in FINRA's Arbitrator's Guide that governs its arbitrators:

> Arbitrator disclosure is the cornerstone of FINRA arbitration, and the arbitrator's duty to disclose is continuous and imperative. Disclosure includes any relationship, experience and background information that may affect—or even appear to affect—the arbitrator's ability to be impartial and the parties' belief that the arbitrator will be able to render a fair decision. **When making disclosures, arbitrators should consider all aspects of their professional and personal lives and disclose all ties between the arbitrator, the parties and the matter in dispute, no matter how remote they may seem. This includes, but is not limited to, lawsuits (even non-investment related lawsuits);** any publications (even if they appear only online); professional memberships; service on boards of directors; etc. If you need to think about whether a disclosure is appropriate, then it is: make the disclosure. **Failure to disclose may result in vacated awards which undermine the efficiency** and finality of our process. Failure to disclose may also result in removal from the roster.

FINRA Arbitrator's Guide at 17 (Nov. 2018) (emphasis in original) [ECF No. 8-18].

The Checklist required arbitrators to affirmatively look for and err on the side of making disclosures:

> When completing the Checklist, *it is essential to make a reasonable and good faith effort to determine* whether you have any relationships with the parties and/or attorneys in the dispute and to make any necessary disclosures. In addition to relationships, it is advisable to disclose any life experience that may raise any doubt about your ability to be impartial. *Any doubts should be resolved in favor of making the disclosure*.

[ECF No. 9-19 at 3] (emphasis added).

Arbitrator Ruiz did not comply with FINRA's required disclosures. She failed to disclose anything about her individual claims and made no disclosures about the dismissal on statute of limitations grounds despite the fact that she was made aware that MSSB was relying on the Puerto Rico statute of limitations as a primary legal defense. This defense was stated on the first page of MSSB's Answer. [ECF No. 9-13].

7

MSSB undoubtedly showed that the two arbitrators failed to make disclosures required by FINRA Rules, those non-disclosures were clearly material and this all created an impression of bias, see Univ. Commons, 304 F.3d at 1339, establishing far more than a "sound basis" for vacatur – it is why the award must be vacated.

Faced with these material non-disclosures, Petitioners cite cases from the Second and Ninth Circuits to argue that it was MSSB's duty to uncover the facts these arbitrators failed to disclose. That is not the law of the Eleventh Circuit. To the contrary, following the Supreme Court's Commonwealth Coatings standard, the Eleventh Circuit has held that the duty of full disclosure is affirmatively owed by the arbitrator, and cannot be shifted to the parties to the arbitration:

> We also find that waiver or estoppel would be inappropriate in view of the code of strict morality and fairness which shapes the arbitrator's affirmative duty of disclosure. Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. at 148, 89 S.Ct. at 339. By positing that appellants have the duty to inquire into the background of the arbitrator, appellant attempts to shift to the parties to the arbitration the burden of determining and disclosing bias or the reasonable appearance thereof. Neither federal nor Florida law supports such a result. As the district court aptly stated, "for the arbitration process to work successfully, the onus must be placed on the arbitrator to reveal potential bias."

Middlesex Mut. Ins. Co., 675 F.2d at 1204.

MSSB had every right to rely on the accuracy of Arbitrators Pilgrim and Ruiz's disclosures. Importantly, the Eleventh Circuit holds that it is not the parties' duty to uncover any undisclosed or inaccurate disclosures made by the arbitrators:

> To hold, in the circumstances of this case, that the insurers waived their right to contest the alleged impartiality of the neutral arbitrator because the insurers did not discover evidence of partiality prior to arbitration would put a premium on concealment. Waiver applies only where a party has acted with full knowledge of the facts.

Id. at 1204 (citations omitted); see also Berghorst, 2012 WL 5989628, at *4 (finding that even if an arbitrator's "cryptic disclosure" were sufficient to put a party on notice of a potential conflict, no cause existed for the party to inquire further). Petitioners' "waiver" argument cannot possibly support sanctions nor is it even a proper basis to oppose vacatur.

In the same vein, Petitioners place heavy reliance on a Middle District case, Fornell v Morgan Keegan & Co., 2012 WL 3155727 (M.D. Fla. Aug. 3, 2012), in an effort to suggest that MSSB's numerous grounds for vacatur are insufficient and that sanctions are warranted.

8

Petitioners' counsel represented one of the parties in the Fornell case, and must be familiar with the numerous distinctions that make that case entirely irrelevant to this motion. In Fornell, the first of two alleged non-disclosures involved a complaint filed by the arbitrator relating to a consumer loan. Id. The lawsuit was filed approximately *twelve years* before the award was rendered in 2012. Id at *1. The second alleged non-disclosure related to the arbitrator being named in an action to vacate an award in which he allegedly had ex parte communications with a party, but the decision does not provide details on the date of the action and the remoteness in time was not a factor in the decision. Importantly, the court concluded that both of the lawsuits at issue were *not required to be disclosed* under the much narrower disclosure requirements analyzed in that case. The moving party in Fornell also relied only on arbitration rules requiring disclosure of actions in which *the arbitrator's* conduct was "at issue" or which involved the same subject matter at issue. Id. at *2. The court's analysis turned in large part on whether the lawsuits were within these specific requirements. Id. In contrast, MSSB relies on more recent FINRA-required disclosures involving foreclosures and other litigation in which the arbitrator is a party. As discussed in detail above, these disclosure requirements clearly require a disclosure by the arbitrators here.

As to remoteness, Fornell simply holds that a non-disclosure arising from events occurring over twelve years before the arbitration did not require disclosure. Here, the undisclosed events were significantly closer in time (including overlapping the time period at issue in the arbitration). More importantly, the Pilgrim non-disclosure involved a direct adversity with a party-affiliate concerning a foreclosure (in an arbitration involving an alleged "illicit loan"). Moreover, Arbitrator Ruiz's personal claims were dismissed on Puerto Rico statute of limitations grounds (which were a central issue in the arbitration) in a case involving the traumatic loss of a child. Such a result is not quickly forgotten. Fornell provides no support to Petitioners.

II. **MSSB'S MOTION TO VACATE ESTABLISHED THAT THE ARBITRATORS EXCEEDED THEIR AUTHORITY BY AWARDING SANCTIONS THAT WERE PUNITIVE AND EXCESSIVE IN VIOLATION OF APPLICABLE LAW**

In addition to the non-disclosures, MSSB also presented the facts and law showing that the arbitrators exceeded their authority in at least two respects in entering the punitive criminal-like sanction award. As MSSB showed (and which cannot be disputed) FINRA arbitrators do not have ultimate power to award sanctions. Their power is circumscribed and

9

authorizes them to award sanctions. See FINRA Rules 12212 and 12511 [ECF 9-49 and 50]. Applicable law of the Supreme Court (and virtually all other state and federal courts) have unequivocally stated that sanctions that do not reimburse a party for the specific misconduct at issue are punitive and cannot be awarded without the full protection of criminal procedures (including proof "beyond a reasonable doubt"). See, e.g., Goodyear, 137 S. Ct. at 1186; Mine Workers v. Bagwell, 512 U.S. 821, 826-830 (1994).[2] Here, the Award does not – and cannot – make any argument that it is remedial in any way. Indeed, based on Petitioners' counsel's own admissions about how much additional time was required to address the document issues and file their motion for sanctions, remedial sanctions would amount to no more than about 15 hours of fees. [ECF No. 9-45 at 10].[3] Instead, the arbitrators issued a punitive $3 million

---

[2] In an improper attempt to smear MSSB's law firm, Petitioners cite to Coquina Investments v. Rothstein, 2012 WL 3202273 (S.D. Fla. Aug. 3, 2012). That case, however, fully supports MSSB's position because it followed the appropriate process concerning sanctions where they were remedial and not punitive. Indeed, the Court noted that "a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant." Id. at *4 (quoting Serra Chevrolet, Inc. v. Gen. Motor Corp., 446 F.3d 1137, 1147 (11th Cir. 2006)). By contrast, Coquina explained that "[t]he Eleventh Circuit has 'uniformly regarded the imposition of a penalty against attorneys for a punitive purpose as a criminal contempt sanction.'" Id. at *4 (quoting United States v. Skuthan, 442 F. Appx. 460, 461 (11th Cir. 2011)). The court awarded sanctions in the amount of the specific attorney's fees incurred in litigating the particular discovery issues and found that such a "sanction serves to compensate Coquina for the added expense caused [the discovery violations and abusive conduct]." Id. at *17. The analysis in Coquina clearly demonstrates the impropriety of the Award's $3 million punitive sanction.

[3] The motion for sanctions makes a passing argument that MSSB failed to preserve the punitive sanctions issue in the arbitration proceedings, contending that MSSB should have anticipated that the Panel would exceed its authority by awarding millions in punitive retroactive sanctions. Not only did MSSB's Motion and Reply establish that there was no reasonable indication that the arbitrators were considering punitive criminal-like sanctions over an issue that was fully resolved early in the arbitration, but MSSB cited to the Eleventh Circuit's decision in Wright v. Hanna Steel Corp., 270 F3d 1336, 1342 (11th Cir. 2001), which defeats Petitioners' waiver argument. Hanna Steel involved a district court that imposed separate daily administrative penalties to two individuals in violation of relevant statutes that permitted only a single penalty. Although plaintiffs had sought separate penalties in their complaint, Hanna Steel did not argue that separate penalties exceeded the statutory authority until their appeal. The Eleventh Circuit rejected the appellee's argument that Hanna Steel waived its right to challenge the penalty awards by not raising the issue before the district court. Id. at 1342. The Eleventh Circuit held that an appellate court will consider "an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." Id. In any event, none of this supports a sanctions motion.

10

discovery sanction that is nearly twelve times the compensatory damages award of $261,421.63, almost six times the Petitioners' claimed attorneys' fees for the entire case, and nearly $1 million more than the sanctions Petitioners requested. The Award reflects that the arbitrators sought to exercise a criminal police power they did not have.

Moreover, the Award exceeded the arbitrators' authority because it awarded an arbitrary amount of sanctions well beyond the amount sought by Petitioners. Petitioners requested $2,050,000 in sanctions, but the Award increased that amount by nearly 50% without any basis. Courts have vacated awards when the relief awarded was in excess of what was sought. See Totem, 607 F.2d 649 (vacating an arbitration award under 9 U.S.C. § 10(a)(4) because the arbitrators exceeded their powers by entering an award that significantly exceeded claimed damages – "although arbitrators enjoy a broad grant of authority to fashion remedies [under the AAA Rules] the arbitrators are restricted to those issues submitted."). Id. The former Fifth Circuit explained: "It is anomalous for the arbitration panel to award an unrequested item of damages three times larger than any item claimed by North American and then to hear the panel action supported with an argument that the awarded item was naturally intertwined within the scope of the arbitration." Id.

Despite the fact that MSSB has clearly challenged the Award for exceeding the arbitrators' authority, an express ground provided in the FAA, the motion for sanctions seeks to mischaracterize such attacks as merely second-guessing a legal ruling by the arbitrators. This is simply not true. MSSB has not asserted the "manifest disregard of the law standard," and Petitioners "straw man" attacks that the standard is no longer viable simply demonstrate the fact that Petitioners cannot meaningfully address the specific statutory grounds MSSB asserted. MSSB is not taking issue with a contractual interpretation of a contract between the parties or a decision on legal liability, as in the cases Petitioners cite. Rather, in addition to the non-disclosure grounds, the motion to vacate goes to the <u>authority</u> of the arbitrators to issue undeniably punitive sanctions, a power that they did not have. Petitioners' arguments about relitigating mere errors of law have no relevance.

The cases Petitioners cite are fundamentally different. White Springs Agric. Chems., Inc. v. Glawson Invs. Corp., 660 F. 3d 1277 (11th Cir. 2011), involved the argument that the arbitrators did not have power to award attorney's fees even though the agreement to arbitrate expressly granted the power to award fees. Id. at 1281-2. The case had nothing to do with

11

sanctions and the extent the arbitrators had the authority to issue them. There was no limitation in the agreement on the power to award fees (as contrasted by the FINRA rule limiting sanctions) and the fees awarded were actually incurred by the prevailing party (unlike the sanctions here, which did not relate to any expense to Petitioners). Id. The other cases Petitioners cite attempted to second-guess the legal conclusions of cases under the now defunct manifest disregard of the law standard for vacatur without any underlying disclosure issues or exceeding authority arguments (discussed in detail at pages 14-16, below). MSSB has not moved to vacate under manifest disregard of the law. These cases offer no support to Petitioners.

Recognizing that the issuance of a $3 million retroactive discovery sanction, which was extreme on its face, demonstrates the arbitrators exceeded their authority, Petitioners also attempt to justify the sanction by mischaracterizing the actual record and purported prejudice relating to discovery. This has nothing to do with the motion for sanctions since it has no bearing on whether MSSB had a sound basis to move to vacate the award (it did, as discussed above). Rather, this appears to be merely part of their continuing smear campaign against MSSB and its counsel.

In any event, nothing Petitioners argue can change the conclusion that the sanctions were purely punitive and not remedial. There was no spoliation or destruction of documents. The emails were produced early in the proceedings. According to the Award, MSSB was sanctioned $3 million for, among other things, a nine-hour delay in turning over emails (from midnight to approximately 9:00 a.m.) because it sought an *in camera* review. [ECF No. 9-12 Award at 3]. Petitioners did not ask for a postponement, did not seek to recall any witness (they were still on the first witness, the broker, Mr. Aquino), and did not seek any other accommodation based on the production of documents. The hearing stayed on track, was not adjourned and Petitioners' counsel had a full and fair opportunity to cross-examine the broker (who was on the stand for another four days, with a weekend in between) and every other witness with the documents at issue. [ECF No.10 at ¶¶ 10 and 11].

Moreover, contrary to the suggestion in the Motion for Sanctions, MSSB acted in good faith in discovery and complied with the parties' written agreements on the scope of production, which Petitioners' counsel reneged on before an entirely new chairperson

12

appointed just days before the arbitration final hearing who had not previously been involved in any discovery issues.

The sanctions arose from a request in a November 8, 2018 discovery order entered by the prior arbitration chair. Arbitrator Pilgrim was not on the Panel at the time and did not participate in the discovery motion hearing nor in the discovery order. After the prior Chairperson entered the discovery order, the parties engaged in numerous discussions regarding what specific documents Petitioners sought in the request, including specific discussions regarding the scope of email that would satisfy the request. After several conversations, Petitioners' counsel agreed on the scope of MSSB's production, including a written agreement on the scope of an email search that included specific search terms and a cut-off date. Petitioners agreed this e-mail search would "fully comply with" the request at issue. [ECF No. 9-35 and 36].[4]

When the discovery issue arose during the hearing, Petitioners' counsel disregarded the prior discussions concerning the discovery request, refused to acknowledge the parties' prior agreement (including the written agreement on the e-mail search that would "fully comply" with the discovery request) and even sought sanctions for failing to produce the documents at issue for a period of time in which he had agreed to an extension of time for compliance by MSSB. [ECF No. 9-37 at n.10]. MSSB attempted to provide Arbitrator Pilgrim (who had recently been appointed and not previously involved in discovery) with the email chain containing the parties' discovery agreement. She refused to review the agreement and then ordered emails beyond what had previously been agreed to be produced. [ECF No. 9-40].

After the arbitrators entered an order early in the case, MSSB worked diligently to obtain the emails at issue, which were not previously collected, and faced with this order, produced them on a rolling basis and completed the production during the first week of the months-long evidentiary hearing. The emails were clearly subject to Rule of Evidence 408 because they were settlement negotiations, and MSSB requested that the arbitrators consider

---

[4] None of the emails that were later produced in response to subsequent orders by Arbitrator Pilgrim fell within the parties' prior agreements. [ECF No. 9-35, 36 and 37].

13

the emails *in camera* to determine whether they were subject to Rule 408.[5] According to the text of the Award, the Panel apparently took umbrage at this short overnight delay and sanctioned MSSB $3 million.

### III. PETITIONERS FAIL TO PRESENT FACTUAL OR LEGAL SUPPORT FOR SANCTIONS AGAINST MSSB

Finally, the cases Petitioners cite in support of sanctions against MSSB have nothing to do with the record before the Court. Petitioners bring their motion citing Hercules Steel, which did not award sanctions but warned parties seeking vacatur that sanctions are appropriate when they have "no sound basis in the law applicable to arbitration awards" and "without an objectively reasonable belief [they] will prevail." 441 F.3d at 913-14. As reflected in the facts and law addressed above and in MSSB's prior submissions in its Motion to Vacate and Reply that is simply not the case here.[6]

Petitioners rely on several other cases in which sanctions were awarded in response to motions to vacate with no sound basis in law, each of which are readily distinguishable. Petitioners cite World Business Paradise Inc. v. SunTrust Bank, which awarded sanctions after a losing party sought vacatur for partiality but did not identify any actual conflict or any material information that the arbitrator failed to disclose. 403 F. Appx. 468, 469-70 (11th Cir. 2010). Rather, the Motion to Vacate was based solely on (i) a ruling about whether an individual was a party to the arbitration and (ii) allegedly disparate discovery rulings. Id. Moreover, the sanctioned party cited only one California state court case in support of their motion, and failed to file any reply brief. Id. at 471. As evidenced by the Eleventh Circuit authority discussed above, this case is far different and MSSB has presented numerous

---

[5] Chairperson Pilgrim had sustained objections based on the joint defense privilege earlier in the hearing [ECF No. 9-41], and MSSB reasonably expected that she would consider other well-founded privilege objections.

[6] Petitioners do not cite a specific rule under which they seek sanctions. There is mixed guidance in the district courts within this Circuit on whether sanctions pursuant to Hercules Steel must comply with the procedural requirements of Rule 11 or any other preconditions. See, e.g., Morgan Stanley Smith Barney, LLC et al. v. Wallace, No. 17-mc-23855-Scola (S.D. Fla. April 26, 2018) (denying motion for sanctions because the "request does not comply with Federal Rule of Civil Procedure 11(c)(2)…"). Here, Petitioners have made no effort to comply with Rule 11.

14

grounds for vacatur (including but not limited to required disclosures that two arbitrators failed to make).

Petitioners next cite Inversiones y Procesadora Tropical Inpotsa, S.A. v. Del Monte International GmbH, in which the sanctioned party attacked an award because it "reached internally inconsistent holdings" and engaged in a "complete disregard of the law." 2018 WL 8369103, *2 (S.D. Fla. Sept. 25, 2018). The case did not involve nondisclosures or punitive sanctions. In granting sanctions, the court noted that the manifest disregard of the law non-statutory ground for vacatur had been rejected by Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 585 (2008), and concluded that the attack on the award was nothing more than a claim of erroneous reasoning. 2018 WL 8369103, *2. MSSB has relied on multiple statutory grounds of the FAA and supported its Motion to Vacate with specific facts that require vacatur under those grounds. Unlike Inversiones, it did not rely on vacatur grounds that the Eleventh Circuit had previously rejected.

Similarly, Petitioners cite Dunn v. Citigroup Global Markets, Inc. in which the sanctioned party challenged the award based solely on the previously rejected manifest disregard of the law standard. 2011 WL 13227889, *9 (S.D. Fla. July 5, 2011). In other words, the party moving to vacate based its motion on a ground that the Eleventh Circuit had previously unemphatically rejected. Petitioners also cite Schaden v. Bank of America, 2008 WL 11469260, *12 (S.D. Fla. Aug. 20, 2008), which awarded sanctions for a motion to vacate that was nothing more than claiming errors of law. These cases have nothing to do with MSSB's Motion to Vacate.

None of Petitioners' cases remotely address a challenge to an award that is as factually and legally supported as MSSB's Motion to Vacate, which should be granted under controlling law. Even in cases in which vacatur motions had been denied, courts have consistently denied awarding sanctions where the party seeking vacatur has a legal basis for attacking the arbitration award. See, e.g., Abern Financial, Inc. v. IMS Securities, Inc., 2008 WL 11407170, at *2 (S.D. Fla. Mar. 4, 2008); Antietam Industries, Inc. v. Morgan Keegan & Company, Inc., 2013 WL 1213059, at *10 (M.D. Fla. Mar. 25, 2013); Bertin v. Zadok Real Estate Holdings, LLC, 2012 WL 13012463, at *18 (S.D. Fla. Feb. 3, 2012); Francis v. Landstar System Holdings, Inc., 2009 WL 4350250, at *9 (M.D. Fla. Nov. 25, 2009); Gonsalvez v. Celebrity Cruises, Inc., 935 F.Supp.2d 1325, 1335 (S.D. Fla. 2013); Royal

15

Caribbean Cruises, Ltd. v. Soskin, 2017 WL 7798659, at *4 (S.D. Fla. June 2, 2017); Williams v. NCL (Bahamas) Ltd., 2018 WL 5807659, at *7 (S.D. Fla. Nov. 7, 2018).

MSSB's Motion to Vacate fully satisfied the legal grounds for vacatur and Petitioners' motion must be denied.

## IV. PETITIONERS IMPROPERLY RELY ON UNFOUNDED AD HOMINEM ATTACKS

Unable to meaningfully attack the valid factual or legal grounds asserted in the Motion to Vacate, Petitioners, in disappointing fashion, resort to unfounded and irrelevant ad hominem attacks on MSSB and their counsel (citing a settled regulatory matter from fourteen years ago and two court cases that have absolutely no bearing on this dispute). The facts of an unrelated regulatory matter and two cases are irrelevant and need not be addressed in detail, but it bears mentioning that (i) the matters cited by Petitioners did not involve the attorneys at issue in this dispute, (ii) the settled regulatory matter from 2005 involved confusion over available email archives and backups after the actual loss of email servers when MSSB's headquarters were destroyed in the terrorist attacks of 9/11, which potentially impacted multiple cases, but resulted in an agreed fine of $3 million,[7] and (iii) the discovery sanctions in the referenced court cases, including Coquina Investments (which did not involve MSSB), applied the correct legal standards for sanctions that MSSB has cited in this matter and imposed a monetary award (to remedy far greater alleged discovery issues) of attorney's fees that were actually incurred. 2012 WL 3202273 at *4 and *17.

Petitioners' improper attempts to smear MSSB and its counsel by citing irrelevant matters outside of the record reflect the lack of merit in their position. Petitioners' motion for

---

[7] Petitioners attempt to use this regulatory settlement agreement, which was made without admission of any findings or wrongdoing [ECF No. 18-22 at 3], to suggest that MSSB misstated the regulatory guidance for fines relating to discovery issues. It did not. MSSB presented the actual FINRA guidance cited as Exhibit 53 to the Motion to Vacate, which speaks for itself and provides a maximum recommended fine of $77,000 for a failure to produce documents. [ECF No. 9-53 at 33]. Additionally, the regulatory matter Petitioners cited is a settlement agreement between MSSB and a regulator and does not involve an "adjudication on the merits." See In re Merrill Lynch & Co, Inc. Research Reports Securities Litig., 218 F.R.D. 76, 78 (S.D.N.Y. 2003). Moreover, it related to a firm-wide issue applying to multiple cases occurring over years and did not represent sanctions entered in connection with an individual arbitration proceeding.

16

sanctions must stand on its own and there is no basis for sanctions. Instead, the facts and law compel the Court to grant MSSB's Motion to Vacate.

## CONCLUSION

For these reasons, the Court must deny Petitioners motion for sanctions.

Dated: October 1, 2019

**GREENBERG TRAURIG, P.A.**

*/s/ Tracy L. Gerber*
Tracy L. Gerber, Esq. FBN 21245
E-Mail: gerbert@gtlaw.com
Joseph C. Coates, III, FBN 772860
E-Mail: coatesj@gtlaw.com
Jason M. Fedo, FBN 186287
E-Mail: fedoj@gtlaw.com
777 South Flagler Drive, Suite 300 East
West Palm Beach, Florida 33401
Telephone:   (561) 650-7900
Facsimile:    (561) 655-6222

*Attorneys for MORGAN STANLEY SMITH BARNEY LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of October, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Tracy L. Gerber*

*ACTIVE 45874609v9*

17