UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:  1:19-cv-22977-COOKE/GOODMAN

JOSE A. TORRES AND
ISABEL LITOVITCH-QUINTANA,

       Petitioners,

vs.

MORGAN STANLEY SMITH BARNEY LLC
D/B/A MORGAN STANLEY

       Respondent.
_____/

**PETITIONERS' REPLY IN SUPPORT TO MOTION FOR SANCTIONS
PURSUANT TO *HERCULES STEEL***

## INTRODUCTION

In B.L. Harbert Intern., LLC v. Hercules Steel, the Eleventh Circuit warned it was "exasperated by those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards." 441 F.3d 905, 914 (11th Cir. 2006). The Court explained that such actions frustrate the congressional purpose behind the FAA. See Id. at 907 ("if parties who lose in arbitration to freely relitigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less"); see also World Bus. Paradise, Inc. v. Suntrust Bank, 403 F. App'x 468, 470 (11th Cir. 2010) ("We have recognized that '[a]rbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases' and that when litigants pursue baseless contests of arbitration awards, 'the promise of arbitration is broken.'" (quoting Hercules Steel, 441 F.3d at 913)). The Court thus articulated its solution for what it called the "poor looser problem," id. at 907, which refers to "a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail," id. at 913. The Court explained that, while "Courts cannot prevent parties from trying to convert arbitration losses into court victories, . . . we can and should insist that if a party on the short end of an arbitration award attacks [an] award in court without any real legal basis for doing so, that party should pay sanctions." Id. at 913-914. This is the case here.

Morgan Stanley has refused to heed these clear warnings. A cursory review of the Response reveals that the root of Morgan Stanley's challenge is its fundamental disagreement with the Arbitrators refusal to accept its hollow explanations for failing to disclose responsive and highly relevant documents, its finding that Morgan Stanley's actions resulted in "extreme prejudice" to Petitioners "in preparing their case and asserting their claims" (ECF No. 18-1, *Award*, pp. 3-4), its decision to compensate Petitioners to remedy the prejudice suffered, and the monetary amount the Panel deemed appropriate.[1] Unable to accept the Arbitrators

---

[1] See e.g. ECF No. 26, Response in Opposition to Motion for Sanctions, p. 12-14 ("MSSB acted in good faith in discovery . . . MSSB worked diligently . . . The emails were clearly subject to Rule of Evidence 408 . . . MSSB reasonably expected that she would consider [(what it labels as)] well-founded privilege objections.")

findings of fact, or even obtain relief for "manifest disregard of the law," Morgan Stanley attempts to salvage its arbitration loss by attacking two of the Arbitrators as biased, as well as by accusing the Arbitration Panel of exceeding their powers because they failed to consider a Supreme Court case (to which it never cited) when interpreting and applying a FINRA rule, without any sound legal basis to do so.  These tactics have consistently been sanctioned in this Circuit in the context of FAA review.  Following Hercules Steel, the Eleventh Circuit and lower courts have imposed sanctions where, as here: a sore looser to the arbitration (1) accuses the arbitrators of "*evident* partiality" without evidence to support such claim  (see e.g. World Business Paradise Inc. v. Suntrust Bank, 403 F.App'x 468, 469-71 (11th Cir. 2010); Fornell v. Morgan Keegan & Co., 2012 WL 3155727, at *3 (M.D. Fla. Aug. 3, 2012)) (quoting Univ. Commons-Urbana, v. Universal Contractor Inc., 304 F.3d 1331,1339 (11th Cir. 2012), (2) "fail[s] to muster any controlling authority to support their position"  (see e.g. World Business Paradise Inc., F.App'x at 471), (3) questions the Arbitrators legal or factual conclusions (see e.g. Hercules Steel, 441 F.3d at 910; Schaden v. Bank of America, Case No. 08-21534, 2008 WL 11469260 at *12 (S.D. Florida, 2008)); or (4) masquerades an otherwise "manifest disregard of the law" challenge as one under the FAA (see e.g. Inversiones y Procesadora Tropical Inpotsa, S.A. v. Del Monte International GmbH, 2018 WL 8369103 (S.D. Florida, 2018);  Dunn v. Citigroup Global Markets, Inc., 2011 WL 13227889 (S.D. Florida, 2011)).  For the reasons stated below, the Court should similarly sanction Morgan Stanley.

## ARGUMENTS

**A. Morgan Stanley's Frivolous and Unsupported Accusations Against Arbitrators Pilgrim and Ruiz have no Sound Basis in the Law**

"[A]n arbitration award may be vacated due to 'evident partiality' only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998).  Morgan Stanley does not argue that any of the Arbitrators had an "actual conflict," as none existed.  Instead, Morgan Stanley relies on the second prong.  See ECF No. 26, Response to Motion for Sanctions, p. 5; see also, ECF No. 22, Reply in Support of Motion to Vacate, p. 2.  Morgan Stanley then alleges that "the mere failure to disclose requires vacatur." Id. (citing Continental Ins. Co. v. Williams, 1986 WL 20915 at * 5 (S.D.Fla. 1986).  Doubling down, Morgan Stanley contends that in the Southern District's unpublished opinion in

3

Citigroup Global Markets, Inc. v. Berghorst, 2012 WL 5989628 at *3 (S.D.Fla. 2012), "the court . . . ruled that failure to make [FINRA's] required disclosures created a presumption of materiality requiring vacatur." Id.

Morgan Stanley's glaringly omits that "the 'evident partiality' exception is to be strictly construed as it must be if the federal policy favoring arbitration . . . is to be given full effect. The alleged partiality must be 'direct, definite and capable of demonstration rather than remote, uncertain and speculative.'" Gianelli., 146 F.3d at 131 (quoting Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197, 1202 (11th Cir.1982)); see also University Comons, 304 F.3d at 1341 (holding that the party seeking vacatur must establish, *inter alia*, "three key elements: (1) the arbitrator must be aware of the facts comprising a potential conflict; (2) the potential conflict must be one that a reasonable person would recognize; and (3) the arbitrators must fail to disclose the conflict"); Lifecare Intrn., Inc. v. CD Medical, Inc., 68 F.3d 429 (11th Cir. 1995) ("the mere appearance of bias or partiality is not enough to set aside an arbitration award" (citations omitted)).   As a result, a mere failure to disclose **does not** require vacatur, as Morgan Stanley misrepresents.  See Lifecare, 68 F.3d at 434 ("we cannot conclude that Arbitrator Stein's failure to disclose the dispute creates a reasonable impression of partiality"); see also, Positive Software, Inc. v. New Century Motg. Corp., 476 F.3d 278, 283-286 (5th Cir.) (en banc), cert. denied, 551 U.S. 1114 (2007) ("The 'reasonable impression of bias' standard is thus interpreted practically rather with the utmost rigor. . . . Neither the FAA nor the Supreme Court, nor predominant case law, nor sound policy countenances vacatur of FAA arbitral awards for nondisclosure by an arbitrator unless it creates a concrete, not speculative impression of bias.").[2]

### 1. Morgan Stanley Cannot Even Establish a Failure to Disclose

Morgan Stanley argues that it "showed that the two arbitrators failed to make disclosures required by FINRA rules." This is demonstrably false.  As discussed in Petitioners' Response in Opposition to Motion to Vacate, Arbitrator Pilgrim met her disclosure

---

[2] Morgan Stanley grossly misrepresents Williams and Berghorst.  There the Courts did not hold that "the mere failure to disclose requires vacatur," or that "failure to make [FINRA's] required disclosures created a presumption of materiality requiring vacatur."  Instead, the Courts based their holdings by focusing on whether the non-disclosed information demonstrated a significant compromising relationship between the Arbitrators, the proceedings, and the parties, or a party's counsel, family, or others.  This is not the situation here.

4

requirements.  See ECF No. 18 at 7-8.  Nevertheless, Morgan Stanley persists in complaining that "Arbitrator Pilgrim did not disclose the CitiMortgage foreclosure" in response to a FINRA Checklist and Oath of Arbitrator question that asks: "Has any lender ever instituted foreclosure proceedings involving you or a property owned in whole or in part by you directly or indirectly?" ECF No. 26, Response to Motion for Sanctions, p. 6. Morgan Stanley's evidence was insufficient to reach such conclusion—specifically, because an affidavit by attorney David A. Gallo dated February 24, 2014 where he voluntarily withdrew the foreclosure complaint and affirmed that service of process "was not effectuated," ECF No. 9-23.  Morgan Stanley now maintains that "[t]he recently produced documents end Petitioners' speculation that Arbitrator Pilgrim . . . **was served** with the Verified Complaint." ECF No. 22 at 3, n. 4 (emphasis added).  Morgan Stanley refers to a letter sent by Arbitrator Pilgrim to Mr. Gallo the following day—February 25, 2014—by way of which she acknowledges receipt of a "**Notice** of Commencement of Action, Summons and Verified Complaint on February 20, 2014, purporting to be a lawsuit filed by my mortgage lender, CitiMortgage." ECF No. 22-2 (emphasis ours).

      However, rather than bolster Morgan Stanley's position, the letter further confirms that Arbitrator Pilgrim was unaware that a case had effectively been filed, and that no foreclosure proceeding was ever "instituted."  Not only does Attorney Gallo's affidavit dated the day before (February 24, 2014) unmistakably reflect that "service of process was not effectuated" on Arbitrator Pilgrim, in the "newly uncovered" letter Arbitrator Pilgrim categorically expressed: "[u]pon receipt of the papers filed by your office, I reconfirmed **that there was no foreclosure action against me** with my CitiMortgage Homeowner Support Specialist . . . on February 20, 2014" Id. (emphasis added).  Arbitrator Pilgrim further explained that on January 2nd, 2014 she entered into a loan modification with CitiMortgage (included in ECF No. 22-2).  Arbitrator Pilgrim then proceeded to demand written proof "**that you have not filed a lawsuit against me** . . . or that any such filling has been withdrawn." Id. (emphasis added).  As such, Morgan Stanley has not proven she was aware of a foreclosure action being instituted and there was no direct and definite failure to disclose on Arbitrator Pilgrim's part.

      Morgan Stanley accuses Arbitrator Ruiz of "ma[king] incomplete and misleading disclosures regarding the dismissal of claims brought on her behalf and on behalf of her

deceased son." ECF No. 26, p. 6. Morgan Stanley alleges that "Arbitrator Ruiz did not comply with FINRA's required disclosures. She failed to disclose anything about her individual claims and made no disclosures about the dismissal on statute of limitations grounds despite the fact that she was made aware that MSSB was relying on the Puerto Rico statute of limitations as a primary legal defense." Id., p. 7.  However, it is false to say that arbitrator failed to disclose "anything" about her individual claims. Arbitrator Ruiz replied "already on disclosure report,"  and specifically identified the subject matter, the case number, her attorney's name, and the case style reflecting her—in her own capacity—as the lead plaintiff.[3]

Morgan Stanley's position lacks a sound legal basis.  While Morgan Stanley alleges that Arbitrator Ruiz had an obligation to make "disclosures about the dismissal on statute of limitations grounds," it is unable to point to any requirement to do so (i.e. that an arbitrator must disclose affirmative defenses raised in a prior personal litigation or even allegations unrelated to the parties or to the subject matter of the arbitration), or even a single case holding that failure to disclose an affirmative defense raised in a prior litigation justifies vacatur for "evident partiality." Morgan Stanley's position boils down to its conclusory and speculative allegation that Arbitrator Ruiz had "a preconceived notion" on an issue of law. ECF No. 26, Response in Opposition to Motion for Sanctions, p. 2. Yet, even this is of no avail as, it is well settled that an arbitrator's predisposition to an issue of law does not entitle a party to vacatur for "evident partiality."  See Antietam Industries, Inc. v. Morgan Keegan & Co., Inc., 2013 WL 1213059, *5 (M.D. Fl. 2013) (holding that a predisposition on an issue of law is not grounds for vacating an award under the FAA) (citing STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011).

**2. Morgan Stanley's Is Unable to Establish a Direct, Definite and Concrete Compromising Relationship**

As a sister court has noted: "the cases in the Eleventh Circuit-and, to the Court's knowledge, elsewhere-addressing 'evident impartiality'" due to an arbitrator's non-disclosure have involved undisclosed *relationships* that the arbitrator had with a party or a party's counsel, family, or others." Antietam Indus., Inc. v. Morgan Keegan & Co., 2013 WL 1213059, at *5

---

[3] While Morgan Stanley reads the disclosure as omitting her own personal claim, a plain reading of the disclosure does not allow for that conclusion.

(M.D. Fla., 2013) (emphasis in original) (citing University Commons, 304 F.3d at 1334-35 (arbitrator failed to disclose his business relationship with a representative of one of the parties and with counsel to both parties); Gianelli, 146 F.3d at 1310 (arbitrator failed to disclose that he had served as counsel to the corporate representative of one of the parties to the arbitration); and Middlesex, 675 F.2d at 1199 (11th Cir.1982) (arbitrator failed to disclose that his family-owned insurance company was in adversarial litigation with one of the parties to the arbitration)). See also, STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011); Positive Software, Inc., 476 F.3d 278 at 286 ("The draconian remedy of vacatur is only warranted upon nondisclosure that involves a significant compromising relationship"). Morgan Stanley is well-aware that the "evident partiality" standard requires it to show a significant direct and concrete relationship with a party or a party's counsel, family, or others. However, it provides no basis on which such a conclusion can be reached here.

Morgan Stanley does not allege that Arbitrators Barr and Ruiz had a compromising relationship. It nonetheless continues to rehash its allegation that Arbitrator Pilgrim's alleged "failure [to disclose] was compounded by the fact that this action created an adverse relationship with the affiliate of a party." ECF No. 26, p. 6 (emphasis added); see also Id. p. 9 ("the Pilgrim non-disclosure involved a direct adversity with a party-affiliate"). This is plainly untrue. Morgan Stanley's joint venture with Citigroup, by which Citigroup co-owned Morgan Stanley, ended in June 2013. See ECF No. 18-15, Morgan Stanley's 2013 Annual Report, p. 10, n. 13; Gherardi v. Citigroup Global Markets, Inc., 2018 WL 4864851 (S.D. Fla. July 26, 2018) (recognizing that by 2013 Smith Barney was no longer a part of Citi). Citigroup (and CitiMortgage) had nothing to do with Morgan Stanley by the time the foreclosure proceeding was filed, much less by the time Pilgrim was appointed to the Panel five and a half years later. It is thus false and misleading to affirmatively state that Arbitrator Pilgrim had "a direct adversity with a party-affiliate" because there was no adversity (the CitiMortgage lawsuit was withdrawn before being served and the mortgage loan was modified); it was not direct (the foreclosure action and loan modification occurred five years prior to Arbitrator Pilgrim's appointment to the Panel); and CitiMortgage was not "a party-

affiliate" (Morgan Stanley's affiliation with CitiMortgage terminated before the foreclosure suit was even filed).[4]

### 3. Morgan Stanley Fails to Provide the Court with a Sound Legal Basis for its Evident Partiality Argument

Morgan Stanley does not remotely come close to supporting its baseless accusations against two of the Arbitrators as impartial or biased. It provides no evidence that Arbitrator Pilgrim's dealings with CitiMortgage remained contentious and, in fact, points to evidence that lends itself to the opposite conclusion; arbitrator Pilgrim was allowed to modify her loan obligations with CitiMortgage in January 2014 (see ECF No. 22-2) and CitiMortgage voluntarily withdrew the proceeding without even serving her. While Morgan Stanley alleges that Arbitrator Pilgrim "sent CitiMortgage's attorneys a contentious letter," ECF No. 22, p. 3, any such anger appeared to be directed to Mr. Gallo and Arbitrator Pilgrim made no complaints against CitiMortgage. In any event, CitiMortgage has no connection to Morgan Stanley by January 2014.

Moreover, Morgan Stanley cites no case for the proposition that bias may reasonably be presumed from old, isolated, non-securities-related events that do not involve parties (or their relatives or attorneys).[5] Instead, Morgan Stanley asks the Court to reach an inference of bias on the basis of sheer speculation. Specifically, as to Pilgrim, it effectively asks the Court to conclude that because Arbitrator Pilgrim wrote a "contentious letter" to CitiMortgage's attorney in February 2014, whatever anger or animosity she exhibited towards the attorney was transferred to CitiMortgage, that such animosity remained in 2019 when she was appointed to the Panel, that such animosity was then transferred to Morgan Stanley because of its affiliation with CitiMortgage prior to June 2013, and that she exerted revenge in the form of a monetary penalty against Morgan Stanley in the context of a securities dispute because in a way it involved a loan. Similarly Morgan Stanley asks the Court to conclude

---

[4] In any event, just like "[i]t does not follow that an arbitrator's personal feelings in favor or against one attorney would necessarily be transferred to another attorney in the same firm," Lifecare, 68 F.3d at 434 (quoting Int'l Produce, Inc. v. A/S Rosshavet, 638 F.2d 548, 551, n. 3 (2d Cir. 1981), it does not follow that an arbitrator's personal feelings against a corporate party would necessarily be transferred to a corporate affiliate.

[5] While Morgan Stanley desperately attempts to show a connection by arguing that both the foreclosure proceeding and Arbitration involved "loans," the foreclosure proceeding involved purely a mortgage loan, while the Arbitration did not. It also did not involve CitiMortgage's lending practices.

that merely because Arbitrator Ruiz had an unfortunate personal non-securities case dismissed in 2011 on statute of limitations ground, she became biased in all cases involving a statute of limitations defenses regardless of the underlying subject matters, and remained biased more than seven years later. Morgan Stanley's failure to provide any legal support for its contentions is particularly troubling considering that the Eleventh Circuit and many other courts have rejected cases with much stronger connections. See e.g. Lifecare Int', Inc., 68 F.3d at 434 ("It appears to the Court that this case involves a situation that is more in the line of remote, uncertain, and speculative partiality or a mere appearance of bias or partiality, as opposed to bias or partiality that is direct, definite, and capable of demonstration."); see also, Positive Software Solutions, Inc., 476, F.3d at 284 (citing cases).

### B. The Frivolous and Unsupported Sanctions Argument

#### 1. There is no Sound Basis For Morgan Stanley's §10(a)(4) Challenge

Instead of challenging the Arbitrators' application of the law directly, Morgan Stanley frames its challenge as the Arbitrators having exceeded their powers when interpreting and applying a FINRA rule. However, just like an Arbitrator's "manifest disregard of the law" is not reviewable, its interpretation or application of a FINRA rule is irrelevant for purposes of a motion to vacate under§10(a)(4). "'[T]he sole question' a court should ask under the exacting standards of §10(a)(4) 'is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Southern Communications Services, Inc. v. Thomas, 720 F.3d 1352, 1359 (11th Cir. 2013) (quoting Oxford Health Plans, LLC v. Sutter, 569 U.S. 564, 569 (2013)). Here, as Morgan Stanley already admitted to the Panel that "FINRA Rule 12511 and 12212 govern sanctions and permit a Panel to award sanctions when a party commits discovery abuse by failing to comply with the provisions of the FINRA Code or an order of the Panel." Moreover, as it has been unable to dispute, the Parties here categorically empowered the Panel with the exclusive authority to interpret and construe such FINRA Rules. Therefore, the Arbitrators clearly had the authority to interpret, construct, and apply FINRA's sanctions rules and determine the applicability of any limitations governing a federal court's inherent powers, which Morgan Stanley failed to ever raise.

### 2. Morgan Stanley has no Sound Legal Basis Excusing Waiver

Morgan Stanley waived its newly raised arguments. Despite empowering the panel with the exclusive authority to interpret FINRA rules, being confronted with Petitioners' request for millions of dollars worth of sanctions since the outset of the litigation and thereafter, witnessing a Panel seriously perturbed by its litigation misconduct that asked for briefing on the matter, and being given countless opportunities to present its defense; not once did it raise the arguments it now makes to the Court. Morgan Stanley has utterly failed to preserve the arguments it now makes on appeal. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004); Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wisconsin & Its Local 5, 724 F.3d 939, 944–45 (7th Cir. 2013).

Morgan Stanley nonetheless asks for a lifeline. Buried in a footnote, it argues that Wright v. Hanna Steel Corp., 270 F.3d. 1336, 1342 (11th Cir. 2001), excuses its actions. There the Eleventh Circuit held, *inter alia*, that despite the general rule that appellate courts "generally will not consider an issue or theory that was not raised" before the trier of fact, *id*. p. 1342, some circumstances allow for exceptions. Morgan Stanley clings to two such exceptions: "First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level," id. (quoting Narey v. Dean, 32 F.3d 1521, 1526 (11th Cir.1994). See ECF No. 26, p. 10 n. 3. Neither of these two narrow exceptions apply here.

Morgan Stanley's allegation that "there was no reasonable indication that the arbitrators were considering" severe sanctions is unavailing. There were plenty of indicators that the Panel was considering a multi-million dollar sanctions award; as Morgan Stanley itself admits, barely a couple of sentences after: "Petitioners requested $2,050,000 in sanctions." Id. at p. 11. In addition, the issue is not purely one of law—it required balancing of Morgan Stanley's litigation conduct with the prejudice such conduct caused Petitioners— and Morgan Stanley makes no effort to even explain why "refusal to consider it would result in a miscarriage of justice."

### 3. There is no Sound Basis in the Law to Support the Conclusory Allegation that the Sanctions were Punitive

As explained in Petitioners' Response in Opposition to Motion to Vacate, ECF No. 18, even in circumstances where Courts lack the inherent powers to issue a particular form of relief, parties in arbitration may legally empower arbitrators with the power to issue that same form of relief. Such grants of authority are allowed under applicable law, not contrary to it. Here, FINRA has interpreted its rules as allowing for punitive sanctions. See, FINRA, The Neutral Corner, Volume 1, 2019, p. 6, n. 3 ("panels may issue sanctions to punish parties"). In fact, Morgan Stanley cites no case holding that Arbitration Panels are foreclosed from ordering punitive sanctions. Here, however, the sanctions are not punitive in nature. The Panel directed Morgan Stanley to pay the monetary sanctions directly to Claimants not as a mere form of punishment to deter future misconduct, but because of "the extreme prejudice Respondent's failure of compliance caused Claimants' counsel and asserting their claims without the withheld documents." Moreover, the Panel carefully calibrated the monetary sanctions to the damages caused.[6] The Panel found that Morgan Stanley's actions prevented Claimants from pursuing claims and theories on which they would have prevailed had the documents and information been timely disclosed, and intended to compensate Claimants for their failure to do so as a result of Morgan Stanley's actions. The monetary sanctions awarded (independently or in consideration of the $261,420 in compensatory damages) are well below the damages sought by Petitioners.[7]

## CONCLUSION

Morgan Stanley lacks any sound basis in the law to move to seek vacatur. Morgan Stanley is simply attempting to relitigate this case because it cannot accept the findings of the Panel and its lawful award. Consequently, sanctions are in order.

---

[6] In their post-hearing brief, Claimants requested compensatory damages for investment losses totaling $2,739,792, compensatory damages as for mental anguish under Puerto Rico law (which the Panel could have reasonably assed as significant), attorneys' fees of $1,289,060, and costs in the amount of $125,832. See ECF No. 18-21, Excerpts of Claimants' Post-Hearing Brief, pp. 38-46. And, in the Award itself, the Panel acknowledged that "[a]t the close of the hearing, Claimants requested damages of at least $2,739,792.00, plus attorneys' fees in the amount of $515,624, and punitive damages in the amount of $10,959,148." See ECF No. 18-1, Award, p. 2.

[7] As previously discussed, Morgan Stanley's reliance on Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649 (5th Cir. 1979) is misplaced.

Respectfully submitted,

| | |
|---|---|
| */s/ Jeffrey Erez, Esq.* <br> Jeffrey Erez, Esq. <br> FBN 102369 <br> **SONN & EREZ, PLC** <br> E-Mails: <br> jerez@sonnerez.com <br> jerez@erezlaw.com <br> SunTrust International Center <br> 1 SE Third Avenue, Suite 1670 <br> Miami, FL 33131 <br> Telephone: (305) 728-3320 | */s/ Eliezer A. Aldarondo-López, Esq.* <br> Eliezer A. Aldarondo-López, Esq. <br> *Admitted Pro Hac Vice* <br> **ALDARONDO & LÓPEZ-BRAS, P.S.C.** <br> E-Mails: eliezer.aldarondo@gmail.com <br> eliezer.aldarondo@alblegal.net <br> 16 Las Cumbres Avenue (199) <br> Guaynabo, PR 00969 <br> Telephone: (787) 474-5447 |

October 15, 2019.

## CERTIFICATE OF SERVICE

I hereby certify that this 15th day of October, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/Jeffrey Erez, Esquire*
Jeffrey Erez, Esquire